## No. 6008.

*The State ex rel. Citizens' Bank of Louisiana vs. the Funding Board.

Act No. 26, approved February 17, 1869, created a *conditional* obligation of the State to guarantee the second-mortgage bonds of the New Orleans, Mobile, and Chattanooga Railroad Company.

Before, however, the condition happened, there was a constitutional amendment adopted in November, 1870, prohibiting an increase of the State indebtedness beyond twenty-five millions of dollars, and this limitation had clearly been reached.

If the conditions stipulated in the act had been complied with when the Governor indorsed the guarantee of the State on the second-mortgage bonds of said company, no debt would be created thereby in violation of the constitutional amendment then in force, because said indorsement would only evidence a valid obligation of the State incurred prior to the adoption of the constitutional limitation. It would evidence an unconditional obligation resulting from the performance by said company of the stipulations contained in said act of 1869.

But if, as the evidence shows, the conditional obligation had lapsed when the Governor indorsed the guarantee on said bonds, that indorsement of guarantee would be the creation of a new debt, which was prohibited.

The Governor, in indorsing the bonds, was a fiduciary, discharging the powers conferred on him by act No. 26 of 1869, but these powers were modified by the constitutional amendment supervening between this grant of authority and the exercise thereof; and all parties acquiring said bonds were charged with notice of the authority of the fiduciary who indorsed thereon the guarantee of the State.

But for the constitutional amendment, the indorsement of guarantee would, under section ten of the said act of 1869, bind the State as to relator, or any *bona fide* third holder of said bonds, whether the stipulations of said act had been complied with or not by said company.

If the General Assembly could not create a debt when the bonds in question were guaranteed, and that was the creation of a debt, they could not by enactment provide that the Governor's certification of guarantee shall be the conclusive proof of an indebtedness by the State, and thereby cut off the judiciary from inquiry into the validity of the obligation arising from such guarantee.

The State could not revive by ratification or otherwise the obligation that had lapsed by the failure of the New Orleans, Mobile, and Chattanooga Railroad Company to

23

comply with the stipulations of the act of 1869, because at the date of the alleged acquiescence the constitutional amendment was in force. Hence said bonds are not valid obligations of the State, and can not be funded.

This court is also of opinion that the funding of these bonds is not provided for by the funding act No. 3 of the acts of 1874.

If the funding of these bonds had been contemplated, the Board of Liquidation would not have been required to cancel and destroy them, and thereby defeat the possibility of recovering against the makers of said bonds personally, as well as the right resulting from the mortgage.

APPEAL from the Superior District Court, parish of Orleans. *Haw-kins*, J. *Armand Pitot* and *G. L. Hall*, for plaintiff and appellee. *A. P. Field*, Attorney General, *J. Q. A. Fellows*, and *J. B. Cotton*, for defendant and appellant.

WYLY, J. The relator, the Citizens' Bank, appeals from the judgment refusing a mandamus to compel the Funding Board to fund the sixty bonds of one thousand dollars each held by the relator, which were issued under act No. 26 of 1869, and are known as "second-mortgage bonds of the New Orleans, Mobile, and Chattanooga Railroad Company, guaranteed by the State of Louisiana." The defense is: The guarantee is void, because given after the adoption of the constitutional amendment limiting the State debt to twenty-five millions of dollars, and that limit had, at the time of the guarantee, been exceeded; that act No. 26 of 1869, authorizing the Governor to guarantee the second-mortgage bonds of said company to the extent of twelve thousand five hundred dollars per mile imposed certain conditions precedent to such guarantee:

First—That the grant should be accepted within ninety days.

Second—That the railroad should be located to Houston, Texas, within eight months after said acceptance.

Third—That said corporation was to construct the first section of forty miles and have the same in running order within one year from the survey and location of the entire line of railroad.

Fourth—That it was to construct and lay the rails on the entire road to the Sabine river within three years from such survey and location, and to Houston, Texas, within six months thereafter.

That in case of the failure of said railroad company to comply with said conditions, or any of them, said act provides that the obligation of the State shall cease and determine. That said first section of forty miles was not completed within the time required by said act No. 26, to wit: on the eighteenth of January, 1871, nor until long afterward, and no second section, as required by said act, has ever been completed, although the time for the completion of the entire road to Houston, Texas, has long since expired.

That on failure to complete the first section of forty miles on or before the eighteenth of January, 1871, the obligation of the State to guarantee said second-mortgage bonds ceased and determined, and the subsequent

enactment authorizing such guarantee was in violation of the constitution.

The defense was also made that the bonds held by relator and sought to be funded are not bonds executed by the State and authorized to be funded by act No. 3 of 1874.

The evidence shows that the first section of forty miles was not completed by the eighteenth of January, 1871, the time required by the act; that it was not completed till after the first day of April, 1871, and that no other sections of the road have been completed, although the time has long since expired for completing the whole road.

Section twelve of said act No. 26 declares that "in case of failure of the said company to survey, locate, and construct the said main line of railroad within the State of Louisiana in the manner and within the time limited in this section of this act for such survey, location, and construction, the obligation of the State of Louisiana, by virtue of this act, to guarantee the second-mortgage bonds of said company (as in this act provided) for or upon that portion of the said main line of railroad not constructed within the time limited shall cease and determine, and none of said second-mortgage bonds for or upon that portion of said main line of railroad not constructed within the time limited shall be guaranteed by the State of Louisiana."

Act No. 26, approved seventeenth of February, 1869, created a *conditional* obligation of the State to guarantee the second-mortgage bonds of the New Orleans, Mobile, and Chattanooga Railroad Company.

Before, however, the condition happened there was a constitutional amendment adopted in November, 1870, prohibiting an increase of the State indebtedness beyond twenty-five millions of dollars, and this limitation had already been reached.

If the conditions stipulated in the act had been complied with when the Governor indorsed the guarantee of the State on the second-mortgage bonds of said company, no debt would be created thereby in violation of the constitutional amendment then in force, because said indorsement would only evidence a valid obligation of the State incurred prior to the adoption of the constitutional limitation. It would evidence an unconditional obligation resulting from the performance by said company of the stipulations contained in said act of 1869.

But if, as the evidence shows, the conditional obligation had lapsed when the Governor indorsed the guarantee on said bonds, that indorsement of guarantee would be the creation of a new debt, which was prohibited. The Governor, in indorsing the bonds, was a fiduciary, discharging the powers conferred on him by act No. 26 of 1869; but these powers were modified by the constitutional amendment supervening between this grant of authority and the exercise thereof; and all parties

252            SUPREME COURT OF LOUISIANA,

State ex rel. Citizens' Bank vs. Funding Board.

acquiring said bonds were charged with notice of the authority of the fiduciary who indorsed thereon the guarantee of the State. But for the constitutional amendment the indorsement of guarantee would bind the State as to relator or any *bona fide* third holder of said bonds, whether the stipulations of said act of 1869 had been complied with or not by said company; because section ten of said act provides that " the signature of the Governor to the certificate of guarantee shall be conclusive evidence in favor of the holder of every bond so certified; that the conditions of this act have been complied with on the part of the company, and that said bonds have been duly made and regularly certified and issued, pursuant to the provisions of this act; and every such certificate of guarantee, when so subscribed, shall be a valid and binding obligation of the State of Louisiana in favor of whomsoever shall from time to time be the holder of the bonds bearing such certificate; and the State of Louisiana hereby pledges its public faith and credit to the performance of such guarantee according to its terms."

The constitutional amendment, however, modified and restricted the powers conferred on the Governor in regard to indorsing these bonds. After it went into operation, neither the Governor in the exercise of powers previously granted, nor the General Assembly itself, could create a debt. There was no power in any of the departments to create a debt, because the limitation of twenty-five millions had already been reached.

The Governor could only give the certificate of guarantee in evidence of a valid subsisting obligation of the State arising from the performance by said company of the stipulations of said act twenty-six of 1869. That part of the act making the certification of guarantee by the Governor conclusive proof that the conditions had been complied with by the company, and that the bonds had been duly made, regularly certified, and issued, that they shall be held valid and binding obligations of the State, and pledging the public faith and credit for the performance of such guarantee, we regard as restricted by the constitutional amendment; and all holders of the bonds are charged with notice of the existence and effect of that amendment.

The Governor who certified the guarantee was a fiduciary, and he could exercise no greater powers than his principal, the General Assembly, could exercise. At that time the General Assembly could not declare a certification of guarantee conclusive proof of an indebtedness of the State ; because, if it was not given in evidence of a subsisting valid obligation, it would be the creation of a new debt, in contravention of the constitutional amendment. And the Governor could exercise no greater powers under authority of the General Assembly than that body possessed at the time he certified said bonds.

The New Orleans, Mobile, and Chattanooga Railroad Company had

failed to complete the road in pursuance of the stipulations of the act of 1869, and the obligation of the State to guarantee their bonds had lapsed. The certification of guarantee by the Governor was therefore the creation of a new debt under authority given by the General Assembly prior to the adoption of the constitutional amendment. But this power to create the debt was no greater than if it had been given by the General Assembly on the day the certificate of guarantee was signed by the Governor. The constitutional amendment restricted all unexercised powers delegated by the General Assembly, as well as all powers not delegated, in regard to the right to create a debt beyond twenty-five millions of dollars.

If the General Assembly could not create a debt when the bonds in question were guaranteed, and that was the creation of a debt, they could not by enactment provide that the Governor's certification of guarantee shall be conclusive proof of an indebtedness by the State, and thereby cut off judicial inquiry into the validity of the obligation arising from such guarantee.

What can not be done directly can not be accomplished indirectly.

At the time the guarantee was made, the State could not be bound beyond the limitation of twenty-five millions of dollars by the act of the General Assembly, or by the act of the Governor under authority of the General Assembly, it matters not when the authority was given to him. The extent of this authority must be determined by the extent of the powers of the General Assembly at the time it was exercised by the Governor ; because the mandatary can not exercise greater powers than are possessed by his principal. As the General Assembly could not create a debt, or grant a certificate and make it conclusive evidence of a debt, at the time the Governor guaranteed the bonds of the New Orleans, Mobile, and Chattanooga Railroad Company, the Governor could not do so under authority of the General Assembly. The date of the certificate of guarantee was subsequent to the adoption of the constitutional amendment, and all persons acquiring said bonds were charged with notice of the authority of the Governor to sign the guarantee and with notice of the existence and the effect of the constitutional limitation on the authority given to the Governor by the act of 1869.

The relator, however, contends that if there was delay in complying with the condition requiring the completion of the first section of the road within the time limited in the act of 1869 objection on account thereof was waived by the acquiescence of the State in the subsequent completion of said section by said company, and this acquiescence amounts to a ratification by the State. The difficulty is, the State could not revive, by ratification or otherwise, the obligation that had lapsed by the failure of the New Orleans, Mobile, and Chattanooga Railroad Company to comply with the stipulations of the act of 1869 ; because at the

date of the alleged acquiescence the constitutional amendment was in force.

The bill of exceptions to the evidence admitted to prove the time when the first section of the railroad was completed was not well taken. It was the only means by which the fact could be ascertained whether the New Orleans, Mobile, and Chattanooga Railroad Company had complied with the stipulations of the act of 1869, and, consequently, whether there was a valid subsisting obligation of the State when the bonds were guaranteed ; and the determination of this question was important, in order to ascertain whether the Governor had authority to guarantee the bonds.

We conclude that the constitutional amendment prohibited the guarantee of the bonds, the obligation of the State to do so under the act of 1869 having lapsed by the failure of the New Orleans, Mobile, and Chattanooga Railroad Company to perform the stipulations thereof; also, that said bonds are not valid obligations of the State and can not be funded. We are also of the opinion that the funding of these bonds is not provided for by the funding act, being act No. 3 of the acts of 1874.

That act provides for the issue of consolidated bonds by the Funding Board; that when prepared "said bonds shall be exchanged by the Board of Liquidation for all *valid outstanding bonds of the State,* and all valid warrants drawn previous to the passage of this act,  *  *  *  except warrants issued by the Auditor in payment of the constitutional officers of the State, at the rate of sixty cents in consolidated bonds for one dollar in outstanding bonds and all valid warrants."  *  *  *  "That the consolidated bonds herein authorized shall be held and used by said Board of Liquidation *only for the purpose of exchange as aforesaid;* said bonds shall be used for no other purpose or purposes than as authorized by this act."  *  *  *  And "that the bonds and valid warrants outstanding at the time of the passage of this act shall, as fast as they are received in exchange for consolidated bonds, be canceled and destroyed by said Board of Liquidation."

In precise terms the act provides for funding *the bonds of the State,* and they "shall, as fast as they are received in exchange for consolidated bonds, *be canceled and destroyed."* From the language employed the meaning of the act in regard to the bonds to be funded was evidently the bonds issued by the State—State bonds; because when these bonds were received in exchange for consolidated bonds they would cease to be of any use, and it was prudent and right that they should be immediately " *canceled and destroyed by said Board of Liquidation."*

It would not, however, be prudent and right to cancel and destroy the second-mortgage bonds of the New Orleans, Mobile, and Chattanooga Railroad Company, which were guaranteed by the State, if they were received in exchange for consolidated bonds.

State ex rel. Citizens' Bank vs. Funding Board.

Surely the General Assembly would not direct the cancelling and destroying of this mortgage paper made by said company when taken up by the Board of Liquidation, if they intended them to be taken up in exchange for consolidated bonds.

If the funding of these bonds had been contemplated, the Board of Liquidation would not have been required to cancel and destroy them, and thereby defeat the possibility of recovery against the makers of said bonds personally, as well as the right resulting from the mortgage.

It is therefore ordered that the judgment herein rejecting the demand of the relator be affirmed with costs.

HOWELL, J., *concurring.* In the case of the State ex rel. Citizens' Bank vs. Board of Liquidators, No. 5892, recently decided, we held that the funding act should be strictly construed, and that only the "valid outstanding bonds of the State and all valid warrants drawn previous to the passage" of said act, except certain warrants described, could be exchanged for bonds created by said act, and by the law the evidences of obligations so exchanged are required to be destroyed. The bonds in this case are the bonds of the New Orleans, Mobile, and Chattanooga Railroad Company, and not the bonds of the State, and are, therefore, not embraced in the provisions or contemplation of the funding act. The fact that the State has guaranteed their payment does not, in my opinion, make them the bonds of the State. It only creates the obligation of the State to pay them, if the company fails to do so. And the obligation may have become fixed without making them the *bonds* of the State in the contemplation of the funding act. Had the Legislature intended to include such obligations, it would have used terms to express such intention.

On this ground I concur in the decree.

LUDELING, C. J., *dissenting.* This suit is instituted by the Citizens' Bank of Louisiana to compel the Board of Liquidators, created by act No. 3 of the General Assembly of 1874, to fund sixty bonds and coupons of the New Orleans, Mobile, and Chattanooga Railroad Company, and indorsed and guaranteed by the State of Louisiana. The plaintiff alleged it acquired the said bonds in good faith and for value, before maturity

The defense is "that these bonds were not the bonds of the State," and, therefore, not fundable under act No. 3 of 1874; that the conditions of the act No. 26 of 1869, to be performed on the part of the company, in order to obligate the State to guarantee the payment of the bonds, had not been complied with; and that, therefore, the obligation of the

State to give this guarantee had, in the words of the act, ceased and determined, and this before the guarantee had or could have been given ; that among the conditions were that a section of forty miles should be completed within a specified time, and the whole road within a certain other specified time, and that the bonds were to be guaranteed only as each section of forty miles was completed ; that the first section of forty miles was to have been completed on or before January 18, 1871 ; the whole road to the Sabine by January 18, 1873, and to Houston, Texas, by July 18, 1873 ; that the first section was not completed until May (April), 1871, and that no second section of forty miles was yet completed ; that the obligation of " the State to guarantee the payment of the bonds had ceased and determined on January 18, 1871, and the amendment to the constitution limiting the State debt to $25,000,000, adopted by vote of the people, November 7, 1870, had supervened, and the further increase of the debt or obligation of the State was prohibited, the constitutional limit of the State debt having already been exceeded ; that the guarantee of the payment of these bonds, after the obligation to do so had ceased and determined, was the creation of a new debt, and, being in violation of the constitution, the act of the Governor was null and was beyond his power."

The guarantee of the State was made by virtue of act No. 26 of the General Assembly of Louisiana, approved *the seventeenth of February*, 1869, entitled "an act to expedite the construction of the railroad of the New Orleans, Mobile, and Chattanooga Railroad Company." The act provides " that after the mortgage shall have been delivered and forty miles of road constructed, the company may deliver to the Governor $500,000 of such second-mortgage bonds, *and the Governor shall thereupon subscribe a certificate on said bonds, in the following words : The payment of the principal of the within bond, when due, and the interest thereon, as it accrues, is guaranteed by the State of Louisiana; .* * * and he shall affix the great seal of the State, and the said seal shall be attested by the signature of the Secretary of State ; and the said bonds shall then be delivered to the company for its general uses and purposes." And the same act further declares, "that *the signature of the Governor to the certificate of guarantee shall be conclusive evidence in favor of the holder of any bond so certified that the conditions of this act have been complied with on the part of the company ; and that said bonds have been duly made and regularly certified and issued pursuant to the provisions of this act ;* and every such certificate of guarantee, when so subscribed, shall be a valid and binding obligation of the State of Louisiana in favor of whomsoever ; * * * and the State hereby pledges its public faith and credit to the performance of such guarantee according to its tenor." Sections eight and ten.

NEW ORLEANS, MARCH, 1876. 257

State ex rel. Citizens' Bank vs. Funding Board.

The certificates of guarantee were duly signed by the Governor, and sealed with the great seal of the State, and attested by the Secretary of State as the law required. The evidence shows that the bonds aforesaid were acquired before maturity, in good faith, and for value.

The first objection urged against the demands of the relator is that the bonds are not the bonds of the State, and, therefore, they can not be funded. It has often been decided that "where a third person is privy to the original consideration, and, at the time the note is given, indorses an absolute undertaking on the back to pay it at maturity, he may be treated as a joint and several promissor with the party who signs on the face of the note." 19 Wind. 202 ; 8 Pick. 423 ; 24 Wind. 456 ; 22 How. 341 ; Story on Promissory Notes, sections fifty-eight and fifty-nine. This is decided upon the principle that two instruments of the same general nature, executed at the same time, and relating to the same subject matter, are to be construed together as forming but one obligation. The State and the railroad company promise to pay the money stated on the face of the bonds and at the time specified therein. If one "put his name on the back of the note, at the time it was made, as surety for the maker and for his accommodation, to give him credit with the payee, or if he participated in the consideration for which the note was given, he must be considered a joint maker." 22 Howard 350; Story on Promissory Notes, sections fifty-eight, fifty-nine, and 479.

For the purpose of giving credit to the bonds intended to raise money to build a railroad within the State, the State put its name upon the back of said bonds, at the time they were executed, and thereby promised, unconditionally, to pay said bonds. Therefore, to all intents and purposes, these bonds must be deemed the bonds of the State, and within the intendment of the funding act. If valid, these bonds unquestionably form a part of the *bonded debt of the State*, which it was the purpose of the General Assembly of the people to fund. Are they valid obligations of the State ?

The contract from which these obligations spring, was made by act No. 26 of the General Assembly of 1869. At that time there was no constitutional restriction upon the power of the General Assembly to create debts ; and the General Assembly had the power to enact act No. 26 aforesaid. · It has already been stated that the relator was a *bona fide* holder of the bonds, for a valuable consideration.

It is beyond dispute, now, that bonds like these of relator's in this case are commercial instruments, and that the innocent holder is not affected by equities existing between the original parties. 1 Black. 386 : 2 Wall. 110 : 2 Black. 722 ; 1 Wall. 83 ; 3 Wall. 327.

. In the case of Mercer County vs. Hackett, the Supreme Court said, "The bonds declare on their face that the faith, credit, and property of

the county is solemnly pledged, under authority of certain acts of the Assembly, and that in pursuance of said acts the bonds were signed by commissioners of the county. *They are, on their face, complete and perfect*, exhibiting no defect in form or substance ; and the evidence offered is to show that the recitals on the bonds are not true, and that no law exists to authorize their issue, but that the bonds are not made in pursuance of acts of Assembly authorizing them. We have decided, in the case of Commissioners of Knox County vs. Aspinwall, that when the bonds, on their face, import a compliance with the law under which they issued, the purchaser is not bound to look further." 1 Wall. 83 ; 3 Wall. 327.

The Governor was the lawfully constituted agent of the State to sign the certificates of guarantee, and he was vested with the discretion to decide when the conditions had happened upon which the certificates were to be signed, and, having signed them, the State can not repudiate his act. 3 Wall. 93; 21 Wall. 138, 321, 354. The bonds, on their face, import a compliance with the law under which they issued, and the purchaser was not bound to look further. 1 Wall. 83.

But it is said that inasmuch as the conditions precedent to signing the certificates by the Governor had not happened *before* the adoption of the constitutional amendment limiting the power of the General Assembly to create debts, the power of the Legislature to create debts had ceased, because the State debts then exceeded the limit, and that the act of the Governor in signing the certificates was a nullity.

What effect the adoption of the constitutional amendment had on the contract between the original parties it is not necessary to consider in this case, but as to *bona fide* third holders for value, it could have none.

As already said, the obligation of the contract sprang from the act of the General Assembly, passed long before the adoption of the constitutional amendment, and whether the condition had then happened or not which authorized the Governor to sign the certificates could have no effect against the innocent holder, as the bonds on their face import a compliance with the law.

I therefore dissent.

*Carried by writ of error to the Supreme Court of the United States.