TOWN OF COLOMA *v.* EAVES.

Where, by legislative enactment, authority has been given to a municipality, or to its officers, to subscribe for the stock of a railroad company, and to issue municipal bonds in payment, but only on some precedent condition, such as a popular vote favoring the subscription, and where it may be gathered from the enactment that the officers of the municipality were invested with power to decide whether that condition has been complied with, their recital that it has been, made in the bonds issued by them and held by a *bona fide* purchaser, is conclusive of the fact, and binding upon the municipality; for the recital is itself a decision of the fact by the appointed tribunal.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

Assumpsit brought by the plaintiff below to recover the amount due on the coupons attached to certain bonds, purporting to have been issued by the town of Coloma, through its proper officers, to the Chicago and Rock River Railroad Company, in payment of a subscription of $50,000 by the town to said company. The form of the bond is as follows:—

"UNITED STATES OF AMERICA.        [$1,000.
"COUNTY OF WHITESIDE,
       "*State of Illinois, Town of Coloma:*—

"Know all men by these presents, That the township of Coloma, in the county of Whiteside, and State of Illinois, acknowledges itself to owe and be indebted to the Chicago and Rock River Railroad Company, or bearer, in the sum of $1,000, lawful money of the United States; which sum the said town of Coloma promises to pay to the Chicago and Rock River Railroad Company, or the bearer hereof, on the first day of July, 1881, at the office of the treasurer of the county of Whiteside aforesaid, in the State of Illinois, on the presentation of this bond, with interest thereon from the first day of January, 1872, at the rate of ten per centum per annum, payable annually at the office of the treasurer of the county of Whiteside aforesaid, on the presentation and surrender of the annexed coupons.

"[U. S. $5 revenue-stamp.]

"This bond is issued under and by virtue of a law of the State of Illinois entitled 'An Act to incorporate the Chicago and Rock River Railroad Company,' approved March 24, 1869, and in accordance with a vote of the electors of said township of Coloma,

at a regular election held July 28, 1869, in accordance with said law, and under a law of the State of Illinois entitled 'An Act to fund and provide for the paying of the railroad debts of counties, townships, cities, and towns,' in force April 16, 1869 ; and, when this bond is registered in the State auditor's office of the State of Illinois, the principal and interest will be paid by the State treasurer, as provided by said last-mentioned law.

" In witness whereof, the supervisor and town-clerk of said town have hereunto set their hands and seals this first day of January, A.D. 1872.

" (Signed)     M. R. ADAMS, *Supervisor.*     [SEAL.]
" (Signed)     J. D. DAVIS, *Town-Clerk.*     [SEAL.] "

Recovery was resisted by the town, mainly upon the alleged ground of a want of power in the officers of the town to issue the bonds, because the legal voters of the town had not been notified to vote upon the question of the town's making the subscription in question.

On the trial of the case, judgment was rendered for the plaintiff for the amount of the coupons, and interest after they were due.

*Mr. C. M. Osborn* for plaintiff.
*Mr. J. Grant, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

It appears by the record that the plaintiff is a *bona fide* holder and owner of the coupons upon which the suit is founded, having obtained them before they were due, and for a valuable consideration paid. The bonds to which the coupons were attached were given in payment of a subscription of $50,000 to the capital stock of the Chicago and Rock River Railroad Company, for which the town received in return certificates of five hundred shares, of $100 each, in the stock of the company. That stock the town retains, but it resists the payment of the bonds, and of the coupons attached to them, alleging that they were issued without lawful authority.

Saying nothing at present of the dishonesty of such a defence while the consideration for which the bonds were given is retained, we come at once to the question, whether authority was shown for the stock subscription, and for the

consequent issue of the bonds. At the outset, it is to be observed that the question is not between the town and its own agents: it is rather between the town and a person claiming through the action of its agents. The rights of the town as against its agents may be very different from its rights as against parties who have honestly dealt with its agents as such, on the faith of their apparent authority.

By an act of the legislature of Illinois, the Chicago and Rock River Railroad Company was incorporated with power to build and operate a railroad from Rock Falls on Rock River to Chicago, a distance of about one hundred and thirty miles. The tenth section of the act enacted, that, " to aid in the construction of said road, any incorporated city, town, or township, organized under the township organization laws of the State, along or near the route of said road, might subscribe to the capital stock of said company." That the town of Coloma was one of the municipal divisions empowered by this section to subscribe fully appears, and also that the railroad was built into the town before the bonds were issued. But it is upon the eleventh section of the act that the defendant relies. That section is as follows : —

" No such subscription shall be made until the question has been submitted to the legal voters of said city, town, or township, in which the subscription is proposed to be made. And the clerk of such city, town, or township, is hereby required, upon presentation of a petition signed by at least ten citizens who are legal voters and tax-payers in such city, town, or township, stating the amount proposed to be subscribed, to post up notices in three public places in each town or township; which notices shall be posted not less than thirty days prior to holding such election, notifying the legal voters of such town or township to meet at the usual places of holding elections in such town or township, for the purpose of voting for or against such subscriptions. If it shall appear that a majority of all the legal voters of such city, town, or township, voting at such election, have voted 'for subscription,' it shall be the duty of the president of the board of trustees, or other executive officer of such town, and of the supervisor in townships, to subscribe to the capital stock of said railroad company, in the name of such city, town, or township, the amount so voted to be subscribed, and to receive from such company the proper

certificates therefor.  He shall also execute to said company, in the name of such city, town, or township, bonds bearing interest at ten per cent per annum, which bonds shall run for a term of not more than twenty years, and the interest on the same shall be made payable annually; and which said bonds shall be signed by such president or supervisor or other executive officer, and be attested by the clerk of the city, town, or township, in whose name the bonds are issued."

. Sect. 12 provides, " It shall be the duty of the clerk of any such city, town, or township, in which a vote shall be given in favor of subscriptions, within ten days thereafter, to transmit to the county-clerk of their counties a transcript or statement of the vote given, and the amount so voted to be subscribed, and the rate of interest to be paid."

Most of these provisions are merely directory.  But conceding, as we do, that the authority to make the subscription was, by the eleventh section of the act, made dependent upon the result of the submission of the question, whether the town would subscribe, to a popular vote of the township, and upon the approval of the subscription by a majority of the legal voters of the town voting at the election, a preliminary inquiry must be, How is it to be ascertained whether the directions have been followed? whether there has been any popular vote, or whether a majority of the legal voters present at the election did, in fact, vote in favor of a subscription?  Is the ascertainment of these things to be before the subscription is made, and before the bonds are issued? or must it be after the bonds have been sold, and be renewed every time a claim is made for the payment of a bond or a coupon?  The latter appears to us inconsistent with any reasonable construction of the statute. Its avowed purpose was to aid the building of the railroad by placing in the hands of the railroad company the bonds of assenting municipalities.  These bonds were intended for sale; and it was rationally to be expected that they would be put upon distant markets.  It must have been considered, that, the higher the price obtained for them, the more advantageous would it be for the company, and for the cities and towns which gave the bonds in exchange for capital stock.  Every thing that tended to depress the market-value was adverse to

the object the legislature had in view.   It could not have been overlooked that their market-value would be disastrously affected if the distant purchasers were under obligation to inquire before their purchase, or whenever they demanded payment of principal or interest, whether certain contingencies of fact had happened before the bonds were issued,—contingencies the happening of which it would be almost impossible for them in many cases to ascertain with certainty.   Imposing such an obligation upon the purchasers would tend to defeat the primary purpose the legislature had in view; namely, aid in the construction of the road.   Such an interpretation ought not to be given to the statute, if it can reasonably be avoided; and we think it may be avoided.

At some time or other, it is to be ascertained whether the directions of the act have been followed; whether there was any popular vote; or whether a majority of the legal voters present at the election did, in fact, vote in favor of the subscription.   The duty of ascertaining was plainly intended to be vested somewhere, and once for all; and the only persons spoken of who have any duties to perform respecting the election, and action consequent upon it, are the town-clerk and the supervisor or other executive officer of the city or town.   It is a fair presumption, therefore, that the legislature intended that those officers, or one of them at least, should determine whether the requirements of the act prior to a subscription to the stock of a railroad company had been met.   This presumption is strengthened by the provisions of the twelfth section, which make it the duty of the clerk to transmit to the county-clerk a transcript or statement, verified by his oath, of the vote given, with other particulars, in case a subscription has been voted.   How is he to perform this duty if he is not to conduct the election, and to determine what the voters have decided?   If, therefore, there could be any obligation resting on persons proposing to purchase the bonds purporting to be issued under such legislative authority, and in accordance with a popular vote, to inquire whether the provisions of the statute had been followed, or whether the conditions precedent to their lawful issue had been complied with, the inquiry must be addressed to the town-clerk or executive officer of the munici-

pality, — to the very person whose duty it was to ascertain and decide what were the facts. The more the statute is examined, the more evident does this become. The eleventh section (quoted above) declared, that if it should appear that a majority of the legal voters of the city, town, or township, voting, had voted " for subscription," the executive officer and clerk should subscribe and execute bonds. " If it should appear," said the act. Appear when? Why, plainly, before the subscription was made and the bonds were executed; not afterwards. Appear to whom? In regard to this, there can be no doubt. Manifestly not to a court, after the bonds have been put on the market and sold, and when payment is called for, but if it shall appear to the persons whose province it was made to ascertain what had been done preparatory to their own action, and whose duty it was to issue the bonds if the vote appeared to them to justify such action under the law. These persons were the supervisor and town-clerk. Their right to issue the bonds was made dependent upon the appearance to them of the performance of the conditions precedent. It certainly devolved upon some person or persons to decide this preliminary question; and there can be no doubt who was intended by the law to be the arbiter. In *Commissioners* v. *Nichols*, 14 Ohio St. 260, it was said that " a statute, in providing that county bonds should not be delivered by the commissioners until a sufficient sum had been provided by stock-subscriptions, or otherwise, to complete a certain railroad, and imposing upon them the duty of delivering the bonds when such provision had been made, without indicating any person or tribunal to determine that fact, necessarily delegates that power to the commissioners; and, if delivered improvidently, the bonds will not be invalidated."

In the present case, the person or persons whose duty it was to determine whether the statutory requisites to a subscription and to an authorized issue of the bonds had been performed were those whose duty it was also to issue the bonds in the event of such performance. The statute required the supervisor or other executive officer not only to subscribe for the stock, but also, in conjunction with the clerk, to execute bonds to the railroad company in the name of the town for the amount of the subscription. The bonds were required to be signed by

the supervisor or other executive officer, and to be attested by the clerk. They were so executed. The supervisor and the clerk signed them; and they were registered in the office of the auditor of the State, in accordance with an act, requiring that, precedent to their registration, the supervisor must certify under oath to the auditor that all the preliminary conditions to their issue required by the law had been complied with. On each bond the auditor certified the registry. It was only after this that they were issued. And the bonds themselves recite that they "are issued under and by virtue of the act incorporating the railroad company," approved March 24, 1869, "and in accordance with the vote of the electors of said township of Coloma, at a regular election held July 28, 1869, in accordance with said law." After all this, it is not an open question, as between a *bona fide* holder of the bonds and the township, whether all the prerequisites to their issue had been complied with. Apart from and beyond the reasonable presumption that the officers of the law, the township-officers, discharged their duty, the matter has passed into judgment. The persons appointed to decide whether the necessary prerequisites to their issue had been completed have decided, and certified their decision. They have declared the contingency to have happened, on the occurrence of which the authority to issue the bonds was complete. Their recitals are such a decision; and beyond those a *bona fide* purchaser is not bound to look for evidence of the existence of things *in pais*. He is bound to know the law conferring upon the municipality power to give the bonds on the happening of a contingency; but whether that has happened or not is a question of fact, the decision of which is by the law confided to others, — to those most competent to decide it, — and which the purchaser is, in general, in no condition to decide for himself.

This we understand to be the settled doctrine of this court. Indeed, some of our decisions have gone farther. In the leading case of *Knox* v. *Aspinwall*, 21 How. 544, the decision was rested upon two grounds. One of them was that the mere issue of the bonds, containing a recital that they were issued under and in pursuance of the legislative act, was a sufficient basis for an assumption by the purchaser that the conditions

on which the county (in that case) was authorized to issue them had been complied with; and it was said that the purchaser was not bound to look farther for evidence of such compliance, though the recital did not affirm it.    This position was supported by reference to *The Royal British Bank* v. *Torquand*, 6 Ell. & Bl. 327, a case in the Exchequer Chamber, which fully sustains it, and the decision in which was concurred in by all the judges.    This position taken in *Knox* v. *Aspinwall* has been more than once reaffirmed in this court.    It was in *Moran* v. *Miami County*, 2 Black, 732; in *Mercer County* v. *Hackett*, 1 Wall. 83 ; in *Supervisors* v. *Schenk*, 5 id. 784; and in *Mayor* v. *Muscatine*, 1 id. 384.    It has never been overruled; and, whatever doubts may have been suggested respecting its correctness to the full extent to which it has sometimes been announced, there should be no doubt of the entire correctness of the other rule asserted in *Knox* v. *Aspinwall*.    That, we think, has been so firmly seated in reason and authority, that it cannot be shaken.    What it is has been well stated in sect. 419 of Dillon on Munic. Corp.    After a review of the decisions of this court, the author remarks, " If, upon a true construction of the legislative enactment conferring the authority (viz., to issue municipal bonds upon certain conditions), the corporation, or certain officers, or a given body or tribunal, are invested with power to decide whether the condition precedent has been complied with, then it may well be that their determination of a matter *in pais*, which they are authorized to decide, will, in favor of the bondholder for value, bind the corporation."    This is a very cautious statement of the doctrine.    It may be restated in a slightly different form.    Where legislative authority has been given to a municipality, or to its officers, to subscribe for the stock of a railroad company, and to issue municipal bonds in payment, but only on some precedent condition, such as a popular vote favoring the subscription, and where it may be gathered from the legislative enactment that the officers of the municipality were invested with power to decide whether the condition precedent has been complied with, their recital that it has been, made in the bonds issued by them and held by a *bona fide* purchaser, is conclusive of the fact, and binding upon the municipality; for the recital is itself a decision of the fact

by the appointed tribunal.   In *Bissell* v. *Jeffersonville*, 24 How. 287, it appeared that the common council of the city were authorized by the legislature to subscribe for stock in a railroad company, and to issue bonds for the subscription, on the petition of three-fourths of the legal voters of the city.   The council adopted a resolution to subscribe, reciting in the preamble that more than three-fourths of the legal voters had petitioned for it, and authorized the mayor and city-clerk to sign and deliver bonds for the sum subscribed.   The bonds recited that they were issued by authority of the common council, and that three-fourths of the legal voters had petitioned for the same, as required by the charter.   In a suit subsequently brought by an innocent holder for value to recover the amount of unpaid coupons for interest, it was held inadmissible for the defendants to show that three-fourths of the legal voters of the city had not signed the petition for the stock subscription.   A similar ruling was made in *Van Hostrop* v. *Madison City*, 1 Wall. 291, and in *Mercer County* v. *Hackett*, id. 83.

The same principle has recently been asserted in this court after very grave consideration, and it must be considered as settled.   In *St. Joseph's Township* v. *Rogers*, 16 Wall. 644, it is stated thus : —

" Power to issue bonds to aid in the construction of a railroad is frequently conferred upon a municipality in a special manner, or subject to certain regulations, conditions, or qualifications ; but if it appears by their recitals that the bonds were issued in conformity with these regulations, and pursuant to those conditions and qualifications, proof that any or all of these recitals were incorrect will not constitute a defence for the corporation in a suit on the bonds or coupons, if it appears that it was the sole province of the municipal officers who executed the bonds to decide whether or not there had been an antecedent compliance with the regulation, condition, or qualification, which it is alleged was not fulfilled."

There is nothing in the case of *Marsh* v. *Fulton*, 10 Wall. 675, to which we have been referred, at all inconsistent with the rule thus asserted.   In that case, there were no recitals in the bonds ; and there was no decision that the conditions precedent to a subscription, or to the gift of authority to subscribe, had been performed.   The question was, therefore, open.

What we have said disposes of the present case without the necessity of particular consideration of the matters urged in the argument of the defendant below. It was inadmissible to show what was attempted to be shown; and, even if it had been admissible, the effort to assimilate the case to *Marsh* v. *Fulton* would fail. There the subscription was for the stock of a different corporation from that for which the people had voted: here it was not.                    *Judgment affirmed.*

MR. JUSTICE BRADLEY delivered the following concurring opinion: —

I dissent from the opinion of the court in this case, so far as it may be construed to reaffirm the first point asserted in the case of *Knox County* v. *Aspinwall;* to wit, that the mere execution of a bond by officers charged with the duty of ascertaining whether a condition precedent has been performed is conclusive proof of its performance. If, when the law requires a vote of tax-payers, before bonds can be issued, the supervisor of a township, or the judge of probate of a county, or other officer or magistrate, is the officer designated to ascertain whether such vote has been given, and is also the proper officer to execute, and who does execute, the bonds, and if the bonds themselves contain a statement or recital that such vote has been given, then the *bona fide* purchaser of the bonds need go back no farther. He has a right to rely on the statement as a determination of the question. But a mere execution and issue of the bonds without such recital is not, in my judgment, conclusive. It may be *prima facie* sufficient; but the contrary may be shown. This seems to me to be the true distinction to be taken on this subject; and I do not think that the contrary has ever been decided by this court. There have been various *dicta* to the contrary; but the cases, when carefully examined, will be found to have had all the prerequisites necessary to sustain the bonds, according to my view of the case. This view was distinctly announced by this court in the case of *Lynde* v. *The County of Winnebago*, 16 Wall. 13. In the case now under consideration, there is a sufficient recital in the bond to show that the proper election was held and the proper vote given; and the bond was executed by the officers whose duty it

was to ascertain these facts.   On this ground, and this alone, I concur in the judgment of the court.

MR. JUSTICE MILLER, MR. JUSTICE DAVIS, and MR. JUSTICE FIELD, dissented.