## Case No. 13,085.

### SMITH v. ONTARIO.

[15 Blatchf. 267.] [1]

Circuit Court, N. D. New York. Sept. 17, 1878.

TOWNS — BONDS — COMMISSIONERS — CONSENT OF TAX PAYERS.

Section 2 of the act of the legislature of New York. passed April 19, 1869 (Laws N. Y. 1869, c. 241, § 2), provided, that commissioners to be appointed might borrow money on the faith and credit of a town, and issue bonds therefor, but that no debt should be contracted, or bonds issued, until consent in writing should be obtained of a majority of the tax payers owning more than half the taxable property of the town, which fact should be proved by the affidavit of the assessors. which should be filed in the county and town clerks' offices, and should be evidence of the facts therein contained and certified, in the courts and before the judges of the state. In a suit against the town, on coupons attached to negotiable bonds, issued by commissioners professing to act in behalf of the town, the plaintiff being a bona fide holder of the coupons, before maturity, the only evidence of such consent was an affidavit of the assessors. stating that the consent of the requisite majority had 'been obtained, according to the provisions of the statute, that the commissioners of the town, appointed to carry into effect the purposes of the act, "are now authorized by the terms of" the act, to borrow on the faith and credit of the town, a specified sum of money, without anything more about bonds or issuing bonds, and without stating to what the consent had been obtained: *Held*, that the plaintiff could not recover.

[Distinguished in Irwin v. Ontario, 3 Fed. 60.]

[This was an action on certain coupons, by Andrew J. Smith against the town of Ontario. Heard on motion for a new trial.]

C. T. Richardson, for plaintiff.

W. F. Cogswell and J. B. Perkins, for defendant.

WHEELER, District Judge. This cause has been heard on the motion of the plaintiff for a new trial, after a verdict directed by the court for the defendant at the June term, 1877. The action is upon coupons attached to negotiable bonds issued by commissioners professing to act in behalf of the defendant under special laws of the state of New York. The plaintiff appears to be a bona fide holder, for value, of the coupons, before maturity, and entitled to recover upon them, if such a holder of the bonds could recover upon them. These commissioners had no authority in this behalf, except under the provisions of these laws. The laws provided, that the commissioners might borrow money on the faith and

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

credit of the town, and execute bonds therefor, but that no debt should be contracted or bonds issued, until consent in writing should be obtained of a majority of the tax payers owning more than half the taxable property of the town, which fact should be proved by the affidavit of the assessors, which should be filed in the county and town clerks' offices, and should be evidence of the facts therein contained and certified, in the courts and before the judges of the state. It does not appear, from any proof offered outside of the affidavit, that any consent of the requisite majority was obtained. An affidavit of the assessors was made and filed, stating that the consent of the requisite majority had been obtained, according to the provisions of these laws, "that the commissioners of the town of Ontario, appointed to carry into effect the purposes of 'the acts,' are now authorized by the terms of 'the acts' to borrow, on the faith and credit of said town of Ontario, the sum of one hundred and seven thousand dollars," without anything more about bonds, or issuing bonds. The bonds recite that they are issued by virtue of the acts, and that, "these acts authorize" the town "to subscribe for the stock of the Lake Ontario Shore Railroad, and to issue town, village, or city bonds in payment therefor." There is no proof about the origin of the bonds, further than the conceded genuineness of the signatures of the commissioners, and that the plaintiff bought these bonds and coupons, before maturity, of Irwin & Sloan. What the commissioners did with them, or how Irwin & Sloan got them, does not appear.

The plaintiff, although he is a bona fide holder for value, before maturity, of the bonds, cannot recover unless they are genuine bonds of the town. They are executed by agents of the town. If the agents had actual authority, or were held out to have by those having authority to do that, the plaintiff should recover; otherwise, not. Mechanics' Bank v. New York & N. H. R. Co., 3 Kern. [13 N. Y.] 599; The Floyd Acceptances, 7 Wall. [74 U. S.] 666; Marsh v. Fulton Co., 10 Wall. [77 U. S.] 676. The town, as such, in its corporate capacity, had nothing to do about creating the agents, or conferring their authority. Whatever their authority was, it was wholly given by the law. The bonds referred to the law as their source, and all persons dealing in them would be bound to take notice of its provisions. McClure v. Oxford Tp., 94 U. S. 429. The law provided and made known all limitations upon the power to act, and all persons would be as well bound to take notice of those as of the parts giving authority. Persons dealing with the agents, or with their acts, would not be situated at all like those dealing with general agents having private instructions, without notice of the instructions. Here was nothing private. All was as open and known as any part.

There have been a great many cases where the law provided for the appointment of agents for such corporations to issue bonds,

when certain steps should be taken or things done, and either provided that they should determine, or left it wholly for them to determine, when the steps had been taken or things done; and it has been held, that, if they issued the bonds with a statement in or upon them that the steps had been taken or the things done, or, in some cases, without, it would be, where stated, an express, and, where not, an implied, statement, which they were authorized by the law to make, that the facts existed which would give them authority, and that the corporations for which they acted would be bound, although the facts did not actually exist. Warren Co. v. Marcy, 97 U. S. 96; Knox v. Aspinwall, 21 How. [62 U. S.] 539; St. Joseph v. Rogers, 16 Wall. [83 U. S.] 644; Town of Colomo v. Eaves, 92 U. S. 484; Venice v. Murdock, Id. 494; Johnson Co. Com'rs v. January, 94 U. S. 202. This case is not like those. It was not provided that these commissioners should determine when the consent had been obtained, nor left for them to act when it had been obtained, without provision for other determination of the fact. The plain meaning of the law is, that the assessors were to determine when the consent was obtained, and that the commissioners were to issue the bonds after their determination, shown by their affidavit. In the cases referred to, the commissioners, or other agents executing the bonds, had authority to represent that they had authority, and did so. In this case, the assessors had authority to declare, by their affidavit, that the commissioners had authority to issue the bonds, but it was not left to the commissioners thus to hold out that they had such authority. So, the act of the commissioners issuing the bonds did not actually show authority to do it, neither was it an authorized holding out of authority not existing.

It is sometimes said, that, if a law authorizes such corporations to issue bonds, and bonds are issued certifying that they are issued under the law, they are to be protected as commercial paper. It would seem to be more correct now to say, that, if they are issued certifying expressly or impliedly that they are issued under the law, by those authorized to determine that they could properly be issued, they are to be so protected. Warren Co. v. Marcy, ubi supra; Town of Colomo v. Eaves, 92 U. S. 484. Here, the only authorized representation is that contained in the affidavit; and that the plaintiff and all others were bound to notice. If that showed authority, it is enough; if not, none is shown.

It is said, in argument, and in the briefs in behalf of the plaintiff, that like affidavits have been before the courts of the state, in several proceedings upon writs of certiorari, and sustained, but not for what purpose they have been sustained. The affidavits are evidence of a sort of judgments. The enquiry upon certiorari would be likely to be, whether the judgments were correct, as shown by the affidavits, and not what the extent of the

judgments was. The question here is not but that this affidavit is correct and conclusive so far at it goes, but is whether it goes far enough to include authority to issue these bonds. If the question of its extent was involved in the proceedings cited, and the affidavits appeared to be what the brief states they were, they would not be like this one. One referred to is stated to have appeared in the proceedings as stating that consent had been obtained "to bonding said town." There is no such expression in this one. The others referred to in this connection are mentioned as being similar to the one quoted from.

It is also said, that Judges Woodruff, Johnson and Wallace have several times ruled at the circuit, in actions on bonds or coupons, that affidavits like this were sufficient, and several such cases have been mentioned, among them, Bullen v. Yates [Case No. 2,123], and Phelps v. Yates [Id. 11,081]. The affidavits in these cases have not been furnished, but, in Bullen v. Yates, it is stated, that there was offered in evidence "the affidavit of the assessors, that the consents and roll have been examined by them, and that the consents are a majority in number and amount of the persons and property appearing on the rolls." If that statement is correct, that affidavit was very different in language and effect from this one. If the rest were like that, which, from the statement, is as likely as that they are like this, those cases were all different from this. And it is understood, that the courts, in those cases, made the rulings expecting to review them on motions for new trials, which have not been heard, or, if heard, not decided. The deliberate judgments of those judges would, of course, on the same question, have great and controlling weight.

As the cases are made to appear, the question as to the extent and effect of this affidavit seems to be fairly open. According to the statute, the fact was to be proved by the affidavit. The affidavit states, as a fact, that consent had been obtained, but not what to. It states, as a conclusion of law, that the commissioners were then authorized to borrow money on the faith and credit of the town, but not that consent that they might had been obtained. Nor does it refer to the consents or to the laws, or anything outside of itself, to help out its meaning. It is argued, that some phrase or word was left out by mistake, which may properly be supplied, but it reads as if the writer wrote what he intended to write. Perhaps he intended to make an instrument of different effect, and was mistaken as to the effect of what he wrote; but that does not appear but by conjecture. As it was framed, its meaning seems plain. that consent had been given and the commissioners had been authorized to borrow money. Here is no fact showing authority, apart from the conclusion. If the fact and conclusion can be brought together and held to amount to a statement that consent had been given according to the conclusion, then it would prove an authority to borrow money on the faith and credit of the town merely. If so, then the enquiry arises, whether that would include issuing negotiable bonds. The difference between borrowing money, where the liability would be to the lender for the amount actually borrowed and received, with interest, and issuing negotiable bonds on long time, which might go into the hands of an innocent holder, and create liability, whether any money or other value had been received for them or not, would be very great. Authority to do the former might be readily granted, when that to do the latter would be carefully withheld. Tabor v. Cannon, 8 Metc. (Mass.) 456. The statute (Laws 1869, c. 241, § 2) recognizes this difference. It provides, that the commissioners may borrow money and issue bonds therefor, but declares, that "no such debt shall be contracted, or bonds issued," until consent shall have been obtained as provided. This signifies that the consent to do both shall be obtained before both shall be done, if not before either shall be done.

The consents shown include both borrowing money and issuing bonds for it, but it does not appear that they were ever executed by a majority. If that appeared in a proper mode, the authority in fact to do both would exist. But, the plaintiff does not stand upon the ground that such consent by a majority was ever actually given. His ground is, that it must be taken that the consent by the requisite majority was given, because the affidavit states that it was given, whether the statement is true or not. In this he is correct, for the law so provides. But, while such force must be given to what is in the affidavit, it must stop short where the affidavit stops. The affidavit operates as an estoppel which shuts out all inquiry into the truth of what it covers, but it is not favored in the law towards shutting out truth as to what it does not cover. By the most strained construction it seems capable of, it covers authority to borrow money only. This conclusive effect of it grows out of the presumption that there were consents like those mentioned in it executed by a majority, as stated in it, and not out of any presumption that a majority executed any others. No majority executed any other consent, but it cannot be disputed but that such consent as that described was properly executed.

The plaintiff's action is not for money borrowed by the commissioners. It is upon negotiable bonds. They were apparently issued without authority, and are not the genuine bonds of the defendant town, in the sense of the law governing such subjects.

The motion is overruled, and let judgment be entered on the verdict.

[A motion was subsequently made for leave to reargue the above motion for a new trial. The motion was denied. Case No. 13,086.]