## SUTLIFF *v.* LAKE COUNTY.

*(Circuit Court, D. Colorado. July 24, 1891.)*

MUNICIPAL BONDS—VALIDITY—ESTOPPEL—CONSTITUTIONAL LIMIT OF DEBT.

Where county bonds are issued in excess of the constitutional limit of indebtedness, a recital in the bonds that they are issued by virtue of a legislative act which recites the constitutional limitation, and that all the provisions of such act have been fully complied with, does not estop the county from denying the validity of the bonds.

At Law.

*J. W. McClure*, for plaintiff.

*Daniel E. Parks, Jos. S. Jones,* Co. Atty., and *H. B. Johnson*, for defendant.

(1) An estoppel cannot arise upon a recital in a municipal bond respecting the question of authority to issue the same. *Dixon Co.* v. *Field*, 111 U. S. 92, 4 Sup. Ct. Rep. 315; *Carroll Co.* v. *Smith*, 111 U. S. 556, 4 Sup. Ct. Rep. 539; *Katzenberger* v. *Aberdeen*, 121 U. S. 172, 7 Sup. Ct. Rep. 947.

(2) No tribunal can be authorized by legislative authority to make a recital in a municipal bond which will work an estoppel as against a constitutional limitation of indebtedness. *Lake Co.* v. *Graham*, 130 U. S. 683, 9 Sup. Ct. Rep. 654.

(3) The supreme court of the United States has always held that a purchaser of municipal bonds must take notice of the assessed valuation of the property of the municipality; and for the same reason, where the act authorizing the issuance of the bonds requires, as in this case, (Gen. St. § 670,) a record to be made of the public indebtedness of the municipality, notice

thereof is imputed to the purchaser. *Borough of Millerstown* v. *Frederick,* 114 Pa. St. 435, 7 Atl. Rep. 156.

HALLETT, J., (*orally.*) John Sutliff against The Board of County Commissioners of the County of Lake is an action upon coupons attached to certain bonds issued by that county under the provisions of the act of March 24, 1877. The case is submitted to the court upon an agreed statement of facts, from which it appears that the bonds upon which the action is founded were in excess of the constitutional limit; and the question is whether the case is within the decision in *Lake Co.* v. *Graham,* 130 U. S. 683, 9 Sup. Ct. Rep. 654. The plaintiff maintains that the county is estopped to deny the force and validity of the bonds by some recitals in them. The plaintiff, being an innocent holder of the bonds, is entitled to the protection of such recital. His position is stated in the brief filed by his counsel in these words:

"The bonds upon their face recite that they were issued in compliance with a majority vote of the qualified electors of said county, under and by virtue of the above-mentioned act of the legislature, and that all the provisions of said act have been fully complied with by the proper officers in the issuance of this bond."

The act of assembly under which the bonds were issued, contains the same limitation, as to the indebtedness of the county which the county commissioners were not to exceed, as is in the constitution. In effect, it repeats the language of the constitution upon this subject, stating what the limitation shall be; but there is nothing in the act authorizing the county commissioners to ascertain the amount of the indebtedness, and determine the fact whether the bonds were or were not in excess of the constitutional limit. If there had been in the act such a provision as that by which the county commissioners would be authorized to determine the amount of the indebtedness existing at the time of issuing the bonds, and whether the bonds were within or beyond the constitutional limit, there would be something in many decisions of the supreme court to support the position of the plaintiff; because it has been many times decided by the supreme court that, whenever a matter of fact is submitted to the county authorities for their decision and determination, such as the holding of an election, the form in which the bonds shall be issued, and the like, and the county authorities proceed under the act to determine the fact, the county shall be bound by that decision and determination; there shall be no other inquiry concerning it.

But the question in this case lies back of that, and relates to the power of the county to create the indebtedness. It is believed that, whenever such a question has come before the supreme court, it has been uniformly held that the county authorities cannot determine for themselves or otherwise the question of their authority in the premises. Here is something from *Bank* v. *Porter Tp.,* 110 U. S. 614, 4 Sup. Ct. Rep. 254:

"It is, however, contended that, by the settled doctrines of this court, the township is estopped, by the recitals of the bonds in suit, to make its present defense. The bonds, upon their face, purport to have been issued 'in pursuance of the provisions of the several acts of the general assembly of the state

of Ohio, and of a vote of the qualified electors in said township of Porter, taken in pursuance thereof.' These recitals, counsel argue, import a compliance in all respects with the law, and therefore the township will not be allowed, against a *bona fide* holder for value, to say that the circumstances did not exist which authorized it to issue the bonds. It is not to be denied that there are general expressions in some former opinions which, apart from their special facts, would seem to afford support to this proposition, in the general terms in which it is presented."

And then the court proceeds to review several cases decided in that court, and comes to the case of *Town of Coloma* v. *Eaves*, 92 U. S. 484, from which the court quotes this language:

"When legislative authority has been given to a municipality, or to its officers, to subscribe to the stock of a railroad company, and to issue municipal bonds in payment, but only on some precedent condition, such as a popular vote favoring the subscription, and where it may be gathered from the legislative enactment that the officers of the municipality were invested with power to decide whether the conditions precedent has been complied with, their recital that it has been, made in the bonds issued by them, and held by a *bona fide* purchaser, is conclusive of the fact and binding upon the municipality; for the recital itself is a decision of the fact by the appointed tribunal."

This states the proposition to which I referred a moment ago, that when the municipality is authorized to decide a question, and the decision is made, the municipality is bound by that decision. The court then further states:

"But we are of opinion that the rule as thus stated does not support the position which counsel for plaintiff in error take in the present case. The adjudged cases, examined in the light of their special circumstances, show that the facts which a municipal corporation, issuing bonds in aid of the construction of a railroad, was not permitted, against a *bona fide* holder, to question, in face of a recital in the bond of their existence, were those connected with or growing out of the discharge of the ordinary duties of such of its officers as were invested with authority to execute them, and which the statute conferring the power made it their duty to ascertain and determine before the bonds were issued; not merely for themselves, as the ground of their own action, in issuing the bonds, but equally as authentic, and final evidence of their existence, for the information and action of all others dealing with them in reference to it. Such is not the case before us. Had the statutes of Ohio conferred upon a township in Delaware county authority to make a subscription to the stock of this company, upon the approval of the voters at an election previously held, then a recital by its proper officers, such as is found in the bonds in suit, would have estopped the township from proving that no election was in fact held, or that the election was not called and conducted in the mode prescribed by law; for in such case it would be clear that the law had referred to the officers of the township, not only the ascertainment, but the decision, of the facts involved in the mode of exercising the power granted. But in this case, as we have seen, power in townships to subscribe did not come into existence,—that is, did not exist,—except where the county commissioners had not been authorized to make a subscription."

That case clearly points out the distinction between power conferred to be exercised in a manner described and power altogether withheld. Whenever the power is given, and regulations are prescribed as to the manner of its exercise, the recital of the municipal authorities as to the

way in which it has been exercised is conclusive upon them; whenever the power is withheld from the corporation, no recital whatever binds the corporation. This appears still more clearly in the case of *Dixon Co.* v. *Field*, 111 U. S. 92, 4 Sup. Ct. Rep. 315:

"Recurring, then, to a consideration of the recitals in the bonds, we assume, for the purposes of this argument, that they are in legal effect equivalent to a representation or warranty or certificate on the part of the county officers that everything necessary by law to be done has been done, and every fact necessary by law to have existed did exist, to make the bonds lawful and binding. Of course this does not extend to or cover matters of law. All parties are equally bound to know the law; and a certificate reciting the actual facts, and that thereby the bonds were conformable to the law, when judicially speaking they are not, will not make them so, nor can it work an estoppel upon the county to claim the protection of the law. Otherwise it would always be in the power of a municipal body, to which power was denied, to usurp the forbidden authority, by declaring that its assumption was within the law. This would be the clear exercise of legislative power, and would suppose such corporate bodies to be superior to the law itself. And the estoppel does not arise, except upon matters of fact which the corporate officers had authority by law to determine and to certify. It is not necessary, it is true, that the recital should enumerate each particular fact essential to the existence of the obligation. A general statement that the bonds have been issued in conformity with the law will suffice, so far as to embrace every fact which the officers making the statement are authorized to determine and certify. A determination and statement as to the whole series, where more than one is involved, is a determination and certificate as to each essential particular. But it still remains that there must be authority vested in the officers, by law, as to each necessary fact, whether enumerated or non-enumerated, to ascertain and determine its existence, and to guaranty to those dealing with them the truth and conclusiveness of their admissions. In such a case, the meaning of the law granting power to issue bonds is that they may be issued, not upon the existence of certain facts to be ascertained and determined whenever disputed, but upon the ascertainment and determination of their existence by the officers or body designated by law to issue the bonds upon such a contingency. This becomes very plain when we suppose the case of such a power granted to issue bonds upon the existence of a state of facts to be ascertained and determined by some persons or tribunal other than those authorized to issue the bonds. In that case it would not be contended that a recital of the facts in the instrument itself, contrary to the finding of those charged by law with that duty, would have any legal effect. So, if the fact necessary to the existence of the authority was by law to be ascertained, not officially by the officers charged with the execution of the power, but by reference to some express and definite record of a public character, then the true meaning of the law would be that the authority to act at all depended upon the actual objective existence of the requisite fact, as shown by the record, and not upon its ascertainment and determination by any one; and the consequence would necessarily follow that all persons claiming under the exercise of such a power might be put to proof of the fact made a condition of its lawfulness, notwithstanding any recitals in the instrument."

And again:

"This is the rule which has been constantly applied by this court in the numerous cases in which it has been involved. The differences in the result of the judgments have depended upon the question whether, in the particular case under consideration, a fair construction of the law authorized the officers

issuing the bonds to ascertain, determine, and certify the existence of the facts upon which their power, by the terms of the law, was made to depend; not including, of course, that class of cases in which the controversy related, not to conditions precedent, on which the right to act at all depended, but upon conditions affecting only the mode of exercising a power admitted to have come into being. In the present case there was no power at all conferred to issue bonds in excess of an amount equal to ten per cent. upon the assessed valuation of the taxable property in the county."

That is the principle upon which *Lake Co.* v. *Graham* was decided. This decision is cited in that opinion. The principle is that, when power is not given to the county to issue the bonds, no recital whatever binds the county. There must be power to act in the first place; when the power exists, recitals that it is exercised in conformity to the law are conclusive. In this instance, as said in *Lake Co.* v. *Graham*, there was no power. The power not existing, of course the bonds issued are void. The judgment will be for defendant. As counsel for the plaintiff in this suit resides abroad, 90 days will be allowed him to file a bill of exceptions, and bond on writ of error will be in the sum of $500.