### COMMISSIONERS OF JOHNSON COUNTY *v.* JANUARY.

1. Where, upon the performance of certain conditions precedent, the issue of bonds to a railroad company by the board of commissioners of a county in Kansas is authorized by law, the bonds, when issued, if they recite such performance, are, in the hands of a *bona fide* holder for value, binding upon the county.

2. The acceptance and holding by the county of the certificate of stock of the company, the issue and delivery of the bonds to the company, and the payment of interest on them for a time, cured the defects, if any existed, as to the order for submitting the question of subscription to a popular vote, and authorized a *bona fide* taker of the bonds to presume that every thing necessary to their validity had been properly done.

3. The fact that the act under which the bonds were issued is erroneously referred to in their recitals does not render them void.

ERROR to the Circuit Court of the United States for the District of Kansas.

The case is stated in the opinion of the court.

*Mr. Nelson Cobb* for the plaintiffs in error.

The bonds in question derive no validity from the act of Feb. 25, 1868, as it was expressly repealed by the fourth section of the act of Feb. 27, 1869, without any saving clause as to pending proceedings. The election, ordered when the former law was in force, not having been held until after the last law took effect, was, with all the subsequent action to which it

gave rise, unauthorized and void.  *Aspinwall* v. *Commissioners of Daveiss County*, 22 How. 364; *Covington, &c. Railroad Co.* v. *Kenton*, 12 B. Mon. (Ky.) 144.  Their issue was not authorized by the act of 1869, as after its passage no election was ordered, and the county is not estopped from contesting their validity, especially when their recitals show an absence of legal authority for the doings of the board in the premises. *Marsh* v. *Fulton County*, 10 Wall. 676.

The plaintiff below was not therefore a *bona fide* holder of the bonds in question.  This court has repeatedly held that paper otherwise negotiable, which on its face shows that which should arouse suspicion and put the taker upon inquiry, cannot be so transferred as to cut off defences which would have been available against the original holder.  *Fowler* v. *Brantly*, 14 Pet. 318; *Goodman* v. *Simonds*, 20 How. 343; *Angle* v. *North-western Mutual Life Insurance Co.*, 92 U. S. 330; *Harshman* v. *Bates County*, id. 569.

The subsequent acts of the county do not estop it from setting up the defences upon which it relies in this suit.  Bigelow on Estoppel, p. 80; *Clark* v. *Session*, 22 N. Y. 312; *Langdon* v. *Dowd*, 10 Allen, 423; *Freeman* v. *Cooke*, 2 Exch. Rep. 644; *Howard* v. *Hudson*, 2 El. & Bl. 1; *Anderson* v. *Lyon*, 11 Allen, 349; *Wells* v. *Truesdell*, 6 Pick. 455.  The only interest paid on the bonds was that paid to the plaintiff below.  The delivery of the certificates of stock was necessary to complete the subscription, and was, like it, void.  The registration by the State auditor on the application of the holder of the bonds was without notice or knowledge of the county or its officers.  Upon neither of these facts, therefore, can the doctrine of estoppel have any application.

*Mr. James Grant, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

This is an action brought to recover the amount of certain coupons taken from bonds issued by the plaintiffs in error to the St. Louis, Lawrence, and Denver Railroad Company, of which bonds the defendant in error was the holder.

By consent of parties the case was tried by the court without a jury.  The court found the facts, and gave judgment for the

defendant in error. The plaintiffs in error thereupon brought the case to this court for review.

There is no dispute between the parties as to the leading facts of the controversy. The proper authorities submitted the question to the electors of the county, whether the county should subscribe for $100,000 of the stock of the company, to be paid for by issuing its bonds to that amount. The election was ordered on the 25th of January, 1869, and took place on the 6th of April, 1869. The proposition was sanctioned by a majority of more than two to one. The bonds were thereafter executed and deposited as escrows. On the 22d of May, 1871, the commissioners made an order that they should be delivered, and they were delivered accordingly. A certificate of stock was issued and delivered by the company, and is still held by the county. It has never been surrendered, nor offered to be surrendered. The bonds were signed by the chairman and clerk of the board of commissioners, and attested by the county treasurer. There was in each one a recital "that this bond is executed and issued by virtue of, and in accordance with, an act of the legislature of Kansas, entitled 'An Act to authorize counties and cities to issue bonds to railroad companies,' approved Feb. 25, 1868, and is in pursuance of, and in accordance with, the vote of a majority of the qualified electors of the county of Johnson, at a regular election, held on the sixth day of April, 1869." Each one bore, also, the following indorsement: —

"I, A. Thoman, auditor of the State of Kansas, do hereby certify that this bond has been regularly and legally issued ; that the signatures thereto are genuine ; and that the bond has been duly registered in my office, in accordance with an act of the legislature, entitled 'An Act to authorize counties, incorporated cities, and municipal townships to issue bonds for the purpose of building bridges, aiding in the construction of railroads or other works of internal improvements, and providing for the registration of such bonds and the repealing of all laws in conflict therewith,' approved March 2, 1872. Witness my hand and official seal, this twenty-first day of March, 1872."

The certificate is authenticated by the official signature and seal of the auditor.

The road was finished, and has since been in operation.  The county and its inhabitants are in the enjoyment of the benefits arising from it.

There is no imputation of any taint of fraud upon either side.

The county authorities paid the interest upon the bonds for a time.

The county has received what it contracted to receive, and has paid what it contracted to pay.

The plaintiff in the suit is the *bona fide* holder of the bonds.

A case of stronger equity can hardly exist.

Several objections have been taken to the validity of the bonds.  They have been elaborately and ably argued upon both sides.  The view which we take of the controversy renders it necessary to advert to but one of the objections, and to that one briefly.  Our judgment will be placed upon a different ground.

The act mentioned in the recital in the bond was erroneously referred to.  That act does not affect the case, and may be laid out of view.  The act of Feb. 25, 1868, was in force when the order for the election was made.  It gave ample authority for making the order, and for all that was subsequently done. It is insisted that this act was repealed by the act of Feb. 27, 1869; that the order for the election fell with the act repealed, and that, consequently, the election was held without any legal authority.  Such repeal, so far as regards the authority to make the order, and the continuing efficacy of the order, is strenuously controverted upon the other side.

Whatever may be the fact, we are satisfied that after the passage of the act of 1869 all the proceedings were in substantial conformity to its requirements.  It was in force before the election was held and until after the bonds were issued and delivered.

This act, like the act of 1868, authorized the commissioners to issue the bonds when the requirements of the law had been complied with.  They were thus constituted a tribunal for the adjustment of all questions touching the subject.  They were clothed with the power and charged with the duty to decide them.  No appeal or review was provided for.  Their issuing the bonds was the reflex and embodiment of their judgment

that it was proper to do so. It implies a prior determination to that effect. The fact carries with it this presumption. The bonds recite that they were issued in conformity to law, and in pursuance of the election held on the 6th of April, 1869. It is true they refer to the wrong statute, but *falsa demonstratio non nocet*. The bad here does not hurt the good. The act of the commissioners was the act of the county, and the county is conclusively bound by what they have done. As between the county and a *bona fide* holder, no question involving the infirmity of the securities can be raised.

The principle of estoppel applies, and it precludes the obligor from interposing such a defence.

Whether the certificate of the auditor of State, indorsed on the bonds, has or has not the same effect, is a point not necessary in this case to be considered. Taking and holding the certificate of stock, issuing and delivering the bonds, and paying the interest for a time, cured the defect as to the order for an election, if any such existed. Under the circumstances, a *bona fide* taker had a right to presume that every thing had been properly done which was necessary to the validity of the bonds. When this suit was instituted, the objections which have been made were too late.

The views we have expressed have been repeatedly sustained by the adjudications of this court. *Supervisors* v. *Schenk*, 5 Wall. 772; *Olcott* v. *The Supervisors*, 16 id. 698; *City of Lexington* v. *Butler*, 14 id. 283; *Pendleton County* v. *Amy*, 13 id. 298; *Myers* v. *Muscatine*, 1 id. 385; *Knox* v. *Aspinwall*, 21 How. 544; *Lind* v. *The County*, 16 Wall. 6; *St. Joseph's Township* v. *Rogers*, id. 644; *Pine Grove* v. *Talcot*, 19 Wall. 666.

We refer especially to the closing part of the opinion in the case last mentioned.                    *Judgment affirmed.*