STEWART (KNOWLES v.). See Case No. 7,900.

## Case No. 13,432.

### STEWART v. LANSING.

[15 Blatchf. 281.] [1]

Circuit Court, N. D. New York. Sept. 21, 1878. [2]

JUDGMENT—RIGHTS ESTABLISHED—RAILROAD COMPANIES—COUNTY AID BONDS—COUPONS.

1. Under chapter 907 of the Laws of New York of 1869, passed May 18th, 1869, the coun-

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]
[2] [Affirmed in 104 U. S. 505.]

ty judge of Tompkins county adjudged that certain persons, who petitioned that the town of L., in that county, might issue its bonds in aid of a railroad, were a majority of the tax payers representing the majority of the taxable property of the town, and entered the judgment of record. Under chapter 925 of the Laws of New York of 1871 passed May 12th, 1871, a certiorari was issued, May 27th, 1871, to the county judge, to review that judgment. In August following, the bonds, with coupons, were issued. In May, 1872, the judgment of the county judge was reversed. Some of the coupons passed to the plaintiff, and he brought suit on them in this court, and had judgment against the town. Bailey v. Lansing [Case No. 738]. In this suit by him on others of the coupons: Held, that the former judgment did not conclusively establish his right to recover in this suit. Held, also, that, because of the reversal of the judgment of the county judge, the town was not liable in this suit.

2. After the commencement of the proceeding by certiorari, there was no authority to issue the bonds.

[This was an action by John J. Stewart against the town of Lansing to recover for certain interest coupons.]

James R. Cox, for plaintiff.
Milo Goodrich, for defendant.

WHEELER, District Judge. This cause has been heard on the motion of the plaintiff for a new trial, after a verdict for the defendant, directed by the court. The action is brought upon interest coupons originally attached to bonds issued in behalf of the defendant town to the Cayuga Lake Railroad Company. The defendant denies that the bonds were ever lawfully issued in its behalf; that they, or the coupons, were ever binding upon it; and that the plaintiff is in any way entitled to recover upon the coupons.

The laws of the state of New York (Laws 1869, c. 907,) provided, that, whenever a majority of the tax payers, representing a majority of the taxable property of a municipal corporation, which the defendant is, should make application to the county judge, by petition setting forth that they were such majority and desired that the corporation should create and issue its bonds, and invest the same in the stock or bonds of a railroad company in the state, it should be the duty of the judge to give notice of a time and place for taking proof of the facts set forth in the petition as to the number of tax payers joining in it, and the amount of property represented by them, and at that time and place to take such proof, and, if it should appear satisfactorily to him, that the petitioners, or they and such other tax payers as should appear and join with them, were such majority, to so adjudge and determine, and cause to be entered of record; that such judgment and the record thereof should have the same force and effect as other judgments and records of courts of record in the state; and that, if he should so adjudge, he should appoint three commissioners to issue the bonds of the municipal corporation, which should be due in thirty years, and ex-

change them for the stock or bonds of the railroad company. Application was made by tax payers of the defendant, by petition, not alleging, however, that they were such majority, on which the county judge adjudged and determined that they were such majority, and entered the judgment of record. Afterwards, by chapter 925 of the laws of the state, passed May 12th, 1871, it was provided, that review of such proceedings should be by certiorari, on the return of which the court out of which it issued should review all questions of law and fact determined by the county judge, and might reverse, affirm or modify his determination. A writ of certiorari, to review this judgment, issued to the county judge, May 27th, 1871. In August, 1871, the commissioners appointed by the county judge, under the judgment, pursuant to the statute, being personally indemnified by the railroad company against the consequences of the certiorari which had been served upon them, and of which the officers of the railroad company were informed, issued the bonds, dated forward to October 1st, 1871, to be due January 1st, 1902, with interest coupons attached, due semi-annually. On the face of the bonds it was stated, that they were issued by virtue of the law of 1869, and that it authorized the town to issue the bonds. The county judge made return to the writ of certiorari, September 1st, 1871. On the 13th of October, 1871, the railroad company pledged the bonds to Leonard, Sheldon & Foster, bankers, to secure payment of a loan of fifty thousand dollars. Final judgment was rendered on the certiorari by the court that issued the writ, that the judgment of the county judge was manifestly erroneous, and that the same and all proceedings before him in relation thereto were in all things reversed, annulled and held for naught. This judgment was entered in the office of the county judge, May 27th, 1872. The railroad company, on the 26th of November, 1872, procured Elliott, Collins & Co., bankers, to make a loan on the pledge of these bonds, and drew on them against the loan, to pay Leonard, Sheldon & Foster, and gave them an order on the latter firm for the bonds, on which they received the bonds. The bonds afterwards passed again to Leonard, Sheldon & Foster, and some of the coupons to the plaintiff. The plaintiff brought suit on some of his coupons in this court, on which he obtained final judgment in his favor. The case is reported as Bailey v. Lansing [Case No. 738]. The plaintiff now claims, that the judgment in his favor in that suit, on those coupons, conclusively establishes his right to recover in this suit on these coupons; and, if not, that he is entitled to recover on the facts proved otherwise. The defendant denies the correctness of each of these propositions.

Each coupon in the former suit constituted, and was declared upon as, a distinct cause

of action; and so of those in this suit. The judgment in that suit conclusively settled, in favor of the plaintiff, everything involved in that controversy, necessary to the right of recovery upon those coupons. This is elementary. It also conclusively settled every fact properly put in issue there, and tried and determined, as to all other controversies between the parties in respect to the subject to which the facts pertained, and nothing more, outside of the causes of action there directly involved. It did not settle that the plaintiff could recover on other coupons like those because he did on those, nor that he had the right to have all similar suits decided in the same way. The judgment of the court became entitled to weight as an authority, on account of the eminence, learning and ability of the court, on all similar questions between any parties. It became conclusive between the parties to it, as to every part of the causes of action tried, whether actually tried or not, and as to all facts relating to other causes of action actually tried and determined, because the law requires that such matters, once tried and determined between parties, shall forever be at rest between the same parties.

The distinction between the conclusiveness of a judgment in respect to everything that might have been brought into the suit in which it was rendered, whether actually brought in or not, and only in respect to the things actually involved, and brought in and determined, in other suits, is well and very clearly pointed out by Lord Ellenborough, C. J., in Outram v. Morewood, 3 East, 346; by Putnam, J., in Arnold v. Arnold, 17 Pick. 4; and by Mr. Justice Field, in Cromwell v. Sac. Co., 94 U S. 351, and in Davis v. Brown, Id. 423.

The issuing these bonds and coupons, the title to them afterwards, while they were kept together, and to the coupons then in suit afterwards, were in issue in the former suit, and the facts concerning them were all determined in favor of the right of the plaintiff to judgment in that suit. There was also involved, tried and determined, as between these parties, that the bonds were originally negotiated between the commissioners and the railroad company in violation of good faith; that Elliott, Collins & Co. were holders of the bonds for value before maturity, in February, 1873, including the coupons; and that they sold them under their right. These facts must be taken to be conclusively settled in this case, but, when so taken, they do not alone conclusively settle that the plaintiff is entitled to recover. If, upon these facts, in connection with the undisputed facts otherwise appearing, or which his evidence tends to prove, he would be entitled to recover, then the direction of a verdict for the defendant was wrong, and a new trial should be granted. Otherwise, not. This makes it necessary to examine further into the merits of the case.

It is understood that the town had not, and it is not claimed that it had, any power to issue these bonds, independently of that conferred by the legislation mentioned. Under the constitution of the state, probably the legislature had power to place the burden of maintaining a railroad, or a part of it, upon the towns, and to authorize the county judge to appoint agents for them to perform the duty, and procure means for that purpose by giving obligations of the towns. Town of Duanesburgh v. Jenkins, 57 N Y. 177. But the legislature has not done so in this case. It has made the authority of the judge to appoint the agents dependent upon the application of the majority of the tax payers in number and property found by judgment to be such, on a petition alleging that they are such. The foundation of the authority to appoint, and of the agents when appointed, is the judgment. The town had no corporate authority to act in the matter, otherwise. Without the judgment, there could be no agent that could bind the town at all, and, probably, no one would claim but that, if the judge should assume to appoint without there being such a judgment, or commissioners should assume to act without any appointment, and bonds should be executed in behalf of a town, they would be merely void and of no validity, even in the hands of a bona fide purchaser for value. President, etc., of Mechanics' Bank v. New York & N H. R. Co., 3 Kern. [13 N. Y.] 599 Township of East Oakland v. Skinner 94 U. S. 255; McClure v. Township of Oxford, Id. 429. So, all liability upon these bonds to any holder anywhere, must rest upon the judgment of the county judge. Doubtless, the petitions were sufficient to call for the exercise of his judgment; and, when he exercised it and rendered a judgment, probably, the judgment, if it had stood unchallenged, would have been a good foundation for the after proceedings. It did stand between one and two months before the law was passed under which it was reviewed, and probably a little longer before proceedings were taken to review it. While it so stood, it did not appear that the plaintiff, or any one under whom he claims, had any knowledge of it or information concerning it, except the railroad company, which also had knowledge of the proceedings to set it aside, and which took the bonds in bad faith and at its own risk. The writ of certiorari had been issued and served before that company received the bonds, and the return was made to it before they were parted with by it. This is understood to be the common-law writ, to remove the proceedings into the court issuing it. Such seems to have been the effect contemplated by the statute. When issued and served, it commenced to operate, and, when returned, it had operated, and the effect was to remove the cause, and to take away all jurisdiction in the court from which it was taken. Brooke, Abr. tit. "Certiorari," 15; Keb. J. P. VI. H. VII. 16; Fitzh. Nat.

Brev. 555, note a; 2 Hawk. P. C. c. 27, § 62; 4 Bl. Comm. 321, Bailey v. Lansing [supra]. After the writ was served, and, especially, after return was made to it, there was no judgment in force in either court on which the authority of the commissioners could rest. The proceedings were still pending to the same effect that they were at any time before the judgment of the county judge had been rendered at all. The legitimate result is, that the bonds were issued without authority and are void

It is true, that, where agents are once clothed with authority by their principals, those who know of it may presume it continues, and, if it is revoked without their knowledge, may safely continue to deal as if it continued. That is because it is more fair that the party who conferred the authority openly, and then privately took it away, should bear the consequences, than that one who did not set it on foot should. Story, Ag. § 491. In this case, there was no agency conferred by the principal, if any was conferred at all. It was conferred by the operation of law, and, if taken away by the same means, the reason for holding the principal to it after it was gone would not apply. One party would be as innocent as the other.

There is a large class of cases wherein it has been held by the supreme court, that, where a municipality has lawful power to issue bonds or other negotiable securities, dependent only upon the adoption of certain preliminary proceedings, the holder in good faith has a right to assume that such preliminary proceedings have been had, if the fact be certified on the face of the bonds, by the authority whose primary duty it is to ascertain it. Warren Co. v. Marcy, 97 U. S. 96; Commissioners of Johnson Co. v. January, 94 U. S. 202; Commissioners of Douglas Co. v. Bolles, Id. 104; Lynde v. Winnebago Co., 16 Wall. [83 U. S.] 6; Board of Com'rs of Knox Co. v. Aspinwall, 21 How. [62 U. S.] 539; St. Joseph v. Rogers, 16 Wall. [83 U. S.] 644; Town of Coloma v. Eaves, 92 U. S. 484. But this is not a case like those. The authorities to issue the bonds were not those charged with such duty. Those to issue the bonds were the commissioners: the one charged with that duty was the county judge. And, further, the bonds do not contain nor carry such a statement. They merely state what law they are issued under, and that it authorizes their issue, without stating that any act had been done under the law. Nor do they come within the doctrine that the mere statement in or upon bonds, that they are issued in pursuance of a law, when issued by the officers charged with the duty of ascertaining whether precedent conditions have been complied with, is a sufficient warrant to a purchaser that they have been complied with, on which Board of Com'rs of Knox Co. v. Aspinwall was partly placed, for, they were not issued by officers so charged. The bonds recite matters of law merely, and are

in effect, like those in Marsh v. Fulton Co., 10 Wall. [77 U. S.] 676, which were held to be invalid in the hands of an innocent purchaser.

It is also true, that, as these bonds are negotiable commercial securities, an ordinary lis pendens would not affect them in the hands of an innocent purchaser. Warren Co. v. Marcy, ubi supra. But, this litigation upon the certiorari was different. It affected the judgment itself, which was the foundation of all authority to issue the bonds, and not the parties merely, and, until it should be ended, leaving the judgment in force, there could be no such authority. In this case it was ended by holding the judgment for naught altogether, so that there never was a time from the commencement of the proceedings upon certiorari, by service of the writ, to their termination, when there was any authority, or color of authority, for issuing the bonds. They were issued under a general law of the state of New York providing for their issue only upon such a judgment, which was, by another general law, subject to review by such proceedings, and the proceedings were all upon the open and known public records of the courts of the state; and, probably, all persons dealing in them would be bound to know the general laws concerning them and to look for the proceedings under the law by which only they could ever have any vitality, if they desired to know, the same as all persons are bound to know, the general laws and the necessity and effect of proceedings under them, relating to other subjects. But, dealers in these bonds were not left to make good their presumed knowledge of the law, by searching it out. The bonds themselves, on their face, referred to the law of their origin. This affected them directly with notice of all the requirements of that law. McClure v. Township of Oxford, 94 U. S. 429. By that they would be informed, or be bound to act as if informed, that the authority to issue the bonds would depend wholly upon a judgment with which the commissioners had nothing of the making to do, and concerning which they would have the same opportunities to learn, by examining the records, as any other persons. An examination of the records would have shown them that the proceedings had been removed and that there was no judgment in force remaining. So Leonard, Sheldon & Foster, and Elliott, Collins & Co., although they were holders for value before maturity, were not unaffected with notice of the defects in the bonds. Id. And Elliott, Collins & Co., under whom the plaintiff claims, really took of the railroad company, which had only pledged the bonds to Leonard, Sheldon & Foster, and had remained the general owner, and was not a bona fide holder in any sense, and their taking was after the proceedings had been ended and the judgment wholly quashed, and the record of the ending had been completed in the office where the original proceedings were commenced.

These considerations seem to be fatal to the right of the plaintiff to recover. These conclusions are different somewhat from those reached in the former case, and have been reached after more careful examination on that account, and in consideration of several cases referred to bearing directly upon this subject, several of which had not then been reported and some not then decided. The motion is overruled. Let judgment be entered on the verdict.

[NOTE. On writ of error this was affirmed by the United States supreme court in Stewart v. Lansing, 104 U. S. 505. Mr. Chief Justice Waite, in delivering the opinion of the court, said that, as between the railroad company and the town, the judgment of the state supreme court, reversing and annulling the order of the county judge, invalidated the bonds, being equivalent to a refusal by the county judge to make the original order. As between the town and a subsequent bona fide holder, the bonds would be good, but under the rule that, where fraud or illegality in the inception of a negotiable paper is shown, an indorsee, before he can recover, must prove that he is a holder for value, the burden of proof was on Stewart to show that he was a bona fide holder. On this point the judgment, in his favor in the prior suit on the coupons was not conclusive, since it did not necessarily involve ownership of the bonds, for coupons are negotiable instruments, capable of separate ownership and transfer. Although the court in its opinion in that suit "used language broad enough to cover the bonds, this language must be confined in its effect to the issues on trial; that is to say, the ownership of the coupons alone." The testimony in the subsequent suit was very defective, failed to show the exact facts as to Elliott & Co.'s parting with the bonds, or even that the plaintiff was actually in existence, or whether Elliott & Co. knew of the judgment of the state supreme court annulling the bonds. The counsel for the plaintiff was counsel for Bailey in the prior action, and for the railroad company when the bonds were got from the commissioners so that a full discovery could easily have been made. "While it would not, perhaps, have been improper for the court, in the exercise of its rightful discretion, to leave the case to the jury on the evidence, we cannot say it was error not to do so. In Pleasants v. Fant, 22 Wall. (89 U. S.) 122, it was held that 'if the court is satisfied that, conceding all the inferences which the jury could justifiably draw from the testimony, the evidence was not sufficient to warrant' a particular verdict, the jury might be so instructed. The record in the Bailey suit was certainly admissible in evidence upon the issue as to the bona fide ownership of the coupons of July, 1872." From Stewart, by one intermediate transfer, the bonds came into the possession of John T. Lytle. The town in May, 1887, began an action in the supreme court of New York to compel Lytle to deliver up the bonds for cancellation, and to enjoin him from transferring them pending the suit. Lytle removed the suit to the circuit court of the United States for the Northern district of New York, and filed a cross bill to compel the payment of the bonds. A decree was given for the complainant, requiring Lytle to surrender the bonds for cancellation, and dismissing the cross bill. Lytle appealed to the supreme court, which affirmed the decree. Lytle v. Town of Lansing, 13 Sup. Ct. 254, 147 U. S. 59.]