DENISON et al. v. MAYOR, ETC., OF CITY OF COLUMBUS.

(Circuit Court, N. D. Mississippi, E. D. September 6, 1894.)

No. 265.

1. MUNICIPAL BONDS—DONATION TO RAILROAD COMPANY—VALIDITY—RATIFICATION.

Act Feb. 1, 1872 (Acts Miss. 1872, p. 297), gave the city of Columbus power to subscribe in aid of the C., F. & D. R. Co., and to issue its bonds therefor. No provision was made for an exchange of bonds for stock, and stock is not mentioned in the act. Acts Miss. 1882, p. 836 (ratifying the consolidation of such railroad company and others into the G. P. R. Co.), § 2, provides that the "donation of $100,000 in its bonds" by the town of Columbus to the C., F. & D. R. Co., but which have not yet been paid over, "be and are hereby declared to be payable to the" G. P. R. Co. In 1884 the city charter of Columbus was amended so as to authorize it to levy and collect a special tax to pay the interest on such bonds, and provide a sinking fund to pay the principal. The bonds were voted as a donation by the constitutional majority of two-thirds of the qualified voters, and interest was paid on the bonds for 11 years. *Held* that, if a donation was

not originally authorized, but only a subscription to the capital stock of the C., F. & D. R. Co., such donation has been ratified by the legislature, the city authorities, and the people.

2. SAME—CHANGE OF ROAD AFTER ISSUANCE OF BONDS—ESTOPPEL.

Acts Ala. 1868, p. 462 (a general act for the creation of railroads), § 21, authorized railroads to consolidate on certain conditions. Section 23 transferred all the property and choses in action of each constituent company to the consolidated company. Acts Miss. 1871, pp. 187, 188, granted the C., F. & D. R. Co. "all the privileges, rights and immunities" conferred by the Alabama act. Acts Miss. 1882, p. 836, authorized the bonds which were payable to the C., F. & D. R. Co. to be delivered to the consolidated company under the same limitations and restrictions under which they would have become payable to such payee. Acts Miss. 1872, p. 298, required the city authorities to issue the bonds only "when the terms of subscription are complied with." *Held*, that such city, in an action by an innocent holder of such bonds on overdue interest coupons, could not set up as a defense that the consolidated company was authorized to build a different road from the one originally chartered, and to leave such city off its line entirely.

This was an action on overdue coupons on bonds issued by the city of Columbus, Miss., to the Columbus, Fayette & Decatur Railroad Company, but delivered to the Georgia Pacific Railway Company, and afterwards transferred to plaintiffs. Defendant demurs to the declaration, and plaintiffs demur to defendant's special pleas. Defendant's demurrer overruled. Plaintiffs' demurrer sustained.

Critz & Beckett, for plaintiffs.

Arnold, Evans & Baldwin, for defendants.

NILES, District Judge. This is a suit on overdue coupons for interest on bonds issued by the defendant to the Columbus, Fayette & Decatur Railroad Company, and delivered to the Georgia Pacific Railway Company, into which the first-named company and several others were consolidated. The main points relied on as defenses are that the bonds were voted as a donation, when the act under which they were voted only authorized a subscription to the capital stock, and that the consolidated company was authorized to build a different railroad from that originally chartered.

The act approved Feb. 1, 1872 (see Acts Miss. 1872, p. 297), gave the city authorities power to subscribe to aid in the construction of the Columbus, Fayette & Decatur Railroad Company, and to issue its bonds to the amount of said subscription. No provision is anywhere made for an exchange of bonds for stock, and stock is nowhere mentioned in the act. The act ratifying the consolidation (Acts Miss. 1882, p. 836, § 2) provides that "the donation of $100,000 in its bonds heretofore agreed to be made by the town of Columbus, to the Columbus, Fayette and Decatur Railroad Company, but which have not yet been paid over, be and are hereby declared to' be payable to the said Georgia Pacific Railway Company." This is a legislative construction, at least, that a donation was authorized, which in such cases is entitled to great respect, and will frequently amount to a legislative ratification. Pompton v. Cooper Union, 101 U. S. 196. In 1884 an act was passed amending the charter of the city of Columbus, in which it was authorized to levy and collect a special tax to pay the interest on these bonds, and to

provide a sinking fund for the ultimate redemption of the principal. The declaration shows that the interest has been paid for 11 years, since 1882.    Here is a ratification by the legislature, in authorizing the bonds to be issued as a donation, and taxation to pay them; a ratification by the city authorities, in issuing them as a donation, and levying the taxes; and a ratification by the people, in the continued payment of the taxes.    It is difficult to conceive a stronger case of ratification, if that were necessary.    The bonds were voted as a donation by the constitutional majority of two-thirds of the qualified voters, as recited in the face of the bonds themselves; and, this only barrier against legislative power being removed, the legislature clearly had the right to ratify.    Supervisors v. Brogden, 112 U. S. 261, 5 Sup. Ct. 125; Katzenberger v. Aberdeen, 121 U. S. 178, 7 Sup. Ct. 947.

It is next objected that by the consolidation a different road was authorized to be built, and that the consolidated company had authority to leave Columbus off its line entirely, and to build by way of Aberdeen.    It is not alleged that the consolidated company was deprived of the right to build the road for which the bonds were voted, or that it actually did build by way of Aberdeen.    The rule is that, if bonds are voted to a railroad company which at that time is authorized to consolidate with other railroads, then the bonds may properly be delivered to the consolidated company.    This principle is announced, and the authorities reviewed, in Livingston Co. v. First Nat. Bank, 128 U. S. 102, 9 Sup. Ct. 18.    There was a general act for the creation of railroads passed by the legislature of Alabama on December 29, 1868 (see Acts Ala. 1868, p. 462).    By the twenty-first section of this act, railroad companies were authorized to consolidate on certain conditions.    By the twenty-third section, all the property and choses in action of each constituent company were transferred to the consolidated company.    By the Mississippi act this Columbus, Fayette & Decatur Railroad was granted "all the privileges, rights and immunities" conferred by the Alabama act.    See Acts Miss. 1871, pp. 187, 188.    Hence, the companies were authorized to consolidate, and the bonds, or right to the bonds, which is a chose in action, was transferred to the consolidated company, unless this right was cut off by the allegation that the consolidated company had an option to build a different road, by way of Aberdeen.    The answer to this is that the city authorities were only required to issue the bonds "when the terms of subscription are complied with."    See Acts Miss. 1872, p. 298.    On their faces, the bonds are payable to the Columbus, Fayette & Decatur Railroad Company.    They were authorized to be delivered to the Georgia Pacific Railway Company, the consolidated company, under the same limitations and restrictions that they were or would have become payable to the Columbus, Fayette & Decatur Railroad Company.    See Acts Miss. 1882, p. 836.    The city authorities of Columbus, Miss., were the tribunal to determine when these conditions were complied with, and issue and deliver the bonds.    They did issue and deliver the bonds, with proper recitals; and they are now estopped, as against innocent purchasers, from alleging that they

acted wrongfully. Block v. Commissioners, 99 U. S. 686; Commissioners v. January, 94 U. S. 202; Commissioners v. Clark, Id. 278; Brooklyn v. Insurance Co., 99 U. S. 362; Moran v. Commissioners, 2 Black, 722.

For these reasons, I think the demurrer to the declaration should be overruled, and the demurrers to the special pleas (from the third to the fifteenth, inclusive) should be sustained, and judgments can be entered accordingly.