MILLER v. PERRIS IRR. DIST. et al.

(Circuit Court, S. D. California. January 15, 1900.)

No. 752.

1. **MUNICIPAL BONDS—IRRIGATION DISTRICTS OF CALIFORNIA—ESTOPPEL BY RECITALS.**

A recital in negotiable bonds issued by the board of directors of an irrigation district in California under the power conferred by Act March 7, 1887, that such bonds were issued "by authority of, and pursuant to, and after a full compliance with, all the requirements of" said act, estops the district, as against bona fide purchasers of such bonds, from asserting that no estimate or determination of the amount of money necessary to be raised by issuing bonds was made by the board, as required by the act, or that the bonds were disposed of in a manner or for considerations other than those prescribed by the act.

2. **SAME—JUDGMENT OF CONFIRMATION—CONCLUSIVENESS.**

A judgment of confirmation in a special proceeding in the superior court by the directors of an irrigation district, brought, under the act supplemental to the Wright act (St. Cal. 1889, p. 212), for the confirmation of the organization of the district and the issue and sale of its bonds, is conclusive on the district as to all questions involved, which include the fact that the estimate required by law of the amount of money necessary to be raised by the issuing of bonds was duly made. Former opinion (85 Fed. 693) explained and reaffirmed.

3. **SAME—DE FACTO CORPORATION—EFFECT OF JUDGMENT OF OUSTER.**

Under the settled doctrine that a de facto corporation may legally do and perform every act and thing which it could do and perform were it a de jure corporation, and that its acts are valid as to all the world, except where challenged by the state in direct proceedings, a judgment in proceedings instituted by the state against an irrigation district in California declaring void the proceedings for the organization of the district does not affect the validity of bonds which the district had previously issued, after having obtained a judgment confirming its organization and the issuance and sale of such bonds as provided by statute.

Heard on pleas to the amended bill, and on demurrer to a supplemental bill.

Works & Lee, for complainant.

C. C. Wright, for defendants.

WELLBORN, District Judge. Complainant, an owner of lands in the irrigation district mentioned, sues for the cancellation of bonds issued by said district, and to enjoin assessments against his lands for the payment of said bonds. The case has already been before me twice,—the first time on demurrer and plea to the original bill (Miller v. Irrigation Dist. [C. C.] 85 Fed. 693), and the second time on demurrer and exceptions to the amended bill (Id., 92 Fed. 263). At the latter hearing a formal ruling on the exceptions was inadvertently omitted, and an order allowing them will now be entered. The facts and statutory provisions pertinent to the present submission, except so far as they are herein stated, will be found in the two cases above cited.

After the demurrer to the amended bill was overruled, defendants pleaded thereto:

First. That they are innocent purchasers of the bonds held by them, and that said bonds contain a recital in the words and figures following to wit:

"This bond is one of a series of bonds, amounting in the aggregate to $442,-000, caused to be issued by the board of directors of said Perris irrigation district, and pursuant to a vote of the electors of said district at an election held for that purpose on the 1st day of November, 1890. The said series of which this bond is one is composed of 884 bonds, each of the denomination of $500; and said bonds are issued by authority of, and pursuant to, and after a full compliance with all of the requirements of, the act of the legislature of the state of California entitled 'An act to provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property, and for the distribution of water thereby for irrigation purposes,' approved March 7, 1887."

Second. That appropriate proceedings were had, and final decree entered therein by the superior court of San Diego county, confirming the organization of said district and issuance of said bonds.

After defendants had interposed these pleas, complainant, by leave of the court, filed a supplemental bill alleging, in substance, that the people of the state of California had brought an action in the nature of quo warranto in the superior court of Riverside county, and that said court in said action rendered a judgment that said irrigation district was and is wholly void, and that said district was unlawfully usurping the rights and powers of, and claiming to be, a lawfully organized district under the laws of this state. To this supplemental bill defendants have demurred on the ground that the matters therein pleaded do not entitle the complainant to equitable relief, and have also excepted to said bill for impertinence, and have also interposed a plea that an appeal has been taken from the decree of the superior court of Riverside county, and that said appeal is pending and undetermined. Said pleas to the amended bill, and demurrer and exceptions and plea to the supplemental bill, having been argued at the same time, are included in the pending submission, and will be considered in the order in which I have stated them:

1. The supreme court of the United States has declared, through a long and unbroken line of decisions, that where a municipality has power, under certain circumstances, to issue, and does issue, bonds which recite that all requirements of the law have been complied with,

and the officers issuing the bonds are charged with the duty of ascertaining and determining the facts authorizing their issuance, the municipality will not, as against bona fide holders, be heard to deny the facts so certified on the face of the bonds. Mercer Co. v. Hackett, 1 Wall. 83, 17 L. Ed. 548; Town of Coloma v. Eaves, 92 U. S. 484, 23 L. Ed. 579; Commissioners v. Bolles, 94 U. S. 104, 24 L. Ed. 46; Commissioners v. January, 94 U. S. 202, 24 L. Ed. 110; San Antonio v. Mehaffy, 96 U. S. 312, 24 L. Ed. 816; Warren Co. v. Marcy, 97 U. S. 96, 24 L. Ed. 977; Sherman Co. v. Simons, 109 U. S. 735, 3 Sup. Ct. 502, 27 L. Ed. 1093; City of Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613, 40 L. Ed. 760; Commissioners v. Rollins, 173 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689; Grattan Tp. v. Chilton (C. C. A.) 97 Fed. 145.

The expression "want of power" has been usefully paraphrased as follows:

"Want of power arises from the following causes: (1) Because the bonds are issued without authority of any statute. (2) Because the statute under which the bonds are issued contravenes some provision of the state constitution. (3) Because the bonds are issued for some private, and not a public, purpose. (4) Because the power exercised is different from that delegated. (5) Because some of the conditions precedent to the issue of the paper (as, for instance, the signatures of a certain number of taxpayers, the presentation of a petition, or the consent of the electors) have not been obtained or performed, or no election has been held, although required, and only upon such compliance are the bonds to issue. (6) Because the total amount of paper issued exceeds the statutory or constitutional limit. In the first two cases the paper is void for want of power, and cannot be cured by any act of the municipal corporation. In the last four cases the paper, although issued without authority, may yet be held good in the hands of a bona fide holder, because of recitals contained in the paper, made by the officers of the corporation issuing it, which assure the purchaser that the paper is lawfully issued, provided there existed statutory authority for the issue of paper such as the paper in the hands of the bona fide holder purports to be; and, although the paper shows no recitals, the municipality may be estopped by its acts from repudiating it. The true meaning of the term 'want of power' is the total lack of authority in the corporation to act; and every act done by the municipal corporation without power is void, and cannot be made valid by any act of the corporation or its officers. Therefore the last four cases cannot logically be construed to arise from want of power, where the term is used in its true sense. They arise from irregularity or illegal use of the power, and for that reason are illegal." Simonton, Mun. Bonds, § 192.

In Mercer Co. v. Hackett, supra, the court says:

"Where county bonds on their face import a compliance with the law under which they were issued, the purchaser is not bound to look further. That evidence of fraud practiced by the railroad company to whom these bonds were delivered, and by whom they were paid to bona fide holders for value, or the fact that they were negotiated at less than their par value, cannot defeat a recovery on them by such holders. That on questions of mercantile or commercial law the federal courts do not feel bound to yield their judgment to state decisions."

In San Antonio v. Mehaffy, supra, the court says:

"The holder of commercial paper, in the absence of proof to the contrary, is presumed to have taken it underdue, for a valuable consideration, and without notice of any objection to which it was liable. If a municipality could under any circumstances issue negotiable securities, the bona fide holder of them has a right to presume that they were issued under the circumstances which give the authority. The municipality is estopped by the recital on the face of the securities to deny their verity as against a bona fide purchaser."

99 F.—10

In the case last quoted from the bonds had the following recital:

"This debt is authorized by a vote of the electors of the city of San Antonio, taken in accordance with the provisions of an act to incorporate the San Antonio and Mexican Gulf Railroad Company, approved September 5, 1850. Entered and recorded in the office, of the city treasurer, and is transferable on delivery.

"City Hall, City of San Antonio, March 1, 1852."

And the court declared the effect of the recital thus:

"This shuts the door, as a matter of law, to all inquiry touching the regularity of the proceedings of the officers charged with the duty of subscribing and making payment in the way specified. The rule in such cases is that, if the municipality could have had power under any circumstances to issue the securities, the bona fide holder has a right to presume that they were issued under the circumstances which gave the authority, and they are no more liable to be impeached in his hands for any infirmity than any other commercial paper. Supervisors v. Schenck, 5 Wall. 772, 18 L. Ed. 556; City of San Antonio v. Lane, 32 Tex. 405."

In Warren Co. v. Marcy, supra, the court says:

"If a municipal body has lawful power to issue bonds, dependent only upon the adoption of certain preliminary proceedings, the holder in good faith has a right to assume that such preliminary proceedings have taken place, if the fact be certified on the face of the bonds themselves by the authority whose primary duty it is to ascertain it. Such bonds may be valid in the hands of a bona fide holder, notwithstanding the fact that the preliminary proceedings requisite to their issue may have been so defective as to sustain a direct proceeding against the officer to annul them or prevent their issue."

In Grattan Tp. v. Chilton, supra, the court says:

"If, under any circumstances, the board would have had authority to issue them, and the bonds would have been valid, innocent purchasers had the right to presume that those circumstances existed when they were issued, and the township was estopped to deny their existence after such purchasers had bought them in reliance upon the certificate that they were issued in compliance with the statute."

Commissioners v. Rollins, supra (the latest decision by the supreme court of the United States on this subject) contains the following summary of prior decisions:

"The adjudged cases, examined in the light of their special circumstances, show that the facts which a municipal corporation issuing bonds in aid of the construction of a railroad was not permitted, against a bona fide holder, to question, in face of a recital in the bonds of their existence, were those connected with or growing out of the discharge of the ordinary duties of such of its officers as were invested with authority to, execute them, and which the statute conferring the power made it their duty to ascertain and determine before the bonds were issued, not merely for themselves, as the ground of their own action, but equally as authentic and final evidence of their existence, for the information and action of all others dealing with them in reference to it. * * * The question of legislative authority to a municipal corporation to issue bonds in aid of a railroad company cannot be concluded by mere recitals, but, the power existing, the municipality may be estoppel by recitals to prove irregularities in the exercise of that power."

There are numerous other decisions by the supreme court of the United States bearing upon the question of estoppel,—some of them referred to in complainant's brief; but it is needless to review them here, since none, I believe, antagonize, while all are substantially agreed upon, the doctrine above enunciated. There is one case, however, cited in complainant's brief (Scipio v. Wright, 101 U. S. 665,

25 L. Ed. 1037), which invites particular notice, because it serves to define and illustrate the scope of the bond recitals in the case at bar. The last two paragraphs of the syllabus are as follows:

"(3) The fact that the bonds were not issued for borrowed money, but were exchanged for stock of the railroad company, is, according to the New York decisions, a defense for the town against a holder who, when he purchased, had notice of the manner of their issue, which decisions this court follows in this case. (4) A bona fide holder, who had no knowledge that the railroad company had received the bonds in payment for the stock taken for the town, would not be liable to such a defense."

In the opinion occurs this language:

"Some time after January 7, 1854,—when does not exactly appear,—Slocum Howland bought the seventeen bonds from the railroad company, with notice that money had not been borrowed upon them, but that they had been transferred by the town supervisor and railroad commissioners, or one or more of them, in the first instance, to the company, in exchange for its stock. What Howland paid for them—whether the company obtained their full par value—is not proved. Howland held the bonds until 1874, after they became due, when he sold them to the plaintiff, taking his note for the whole price; and that note remains unpaid. Neither Howland, therefore, nor Wright, the purchaser from him, stands in the position of a bona fide purchaser without notice of the exchange of the bonds for stock. Had either of them been such a purchaser, the plaintiff's right to recover could not be gainsaid. But the question now is whether the fact that the bonds were not issued for borrowed money, but were exchanged for stock of the railroad company, is a defense for the town against a holder who, when he purchased, had notice of the manner of their issue. Were the question an open one, it would seem that it ought not to be a defense."

The court then proceeds to review certain decisions of the supreme court of the state of New York holding the contrary, saying of them:

"These decisions have been constructions of the identical statute we have now under consideration, and by which the bonds now in suit are alleged to have been issued. The construction given by the state court must therefore be our guide. * * * It thus appears to be the settled construction given by the courts of New York to the act under which the bonds now in suit were issued, and to other similar acts, that they do not authorize an exchange of bonds for shares of the capital stock of railroad companies, and that a purchaser who had notice at the time of his purchase that such a disposition of the bonds was made by the town officers or railroad commissioners cannot recover in a suit brought upon them."

It is to be observed, with reference to this last case, that the court, as already indicated, not only affirms the general doctrine enunciated in cases previously cited,—that, where negotiable bonds import compliance with the law under which they were issued, a bona fide purchaser is not bound to look further for evidence of compliance with the conditions annexed to the power to issue them,—but also treats the negotiation or disposition of the bonds by the municipality as part of their issuance, and not as a matter subsequent thereto. The supreme court of the United States has also repeatedly held that the power and duty of municipal officers issuing bonds to ascertain and determine the facts authorizing their issuance need not be expressly conferred and devolved, but may result from implication. Town of Coloma v. Eaves, 92 U. S. 484, 23 L. Ed. 579; Commissioners v. Bolles, 94 U. S. 104, 24 L. Ed. 46; Commissioners v. January, 94 U. S. 202, 24 L. Ed. 110; Bernards Tp. v. Morrison, 133 U. S. 523, 10 Sup. Ct. 333, 33 L. Ed. 726.

The court in Bernards Tp. v. Morrison, supra, says:

"While it is true that the act does not, in terms, say that these commissioners are to decide that all preliminary conditions have been complied with, yet such express direction and authority is seldom found in acts providing for the issuance of bonds. It is enough that full control in the matter is given to the officers named. In the case of Oregon v. Jennings, 119 U. S. 74, 92, 7 Sup. Ct. 124, 30 L. Ed. 323, the rule is thus stated by Mr. Justice Blatchford: 'Within the numerous decisions by this court on the subject, the supervisors and the town clerk (they being named in the statute as the officers to sign the bonds, and the "corporate authorities" to act for the town in issuing them to the company) were the persons intrusted with the duty of deciding, before issuing the bonds, whether the conditions determined at the election existed. If they have certified to that effect in the bonds, the town is estopped from asserting, as against a bona fide holder, that the conditions prescribed by the popular vote have not been complied with.' Whatever may be the hardships of this particular case, to sustain the defenses pressed would go far towards destroying the market value of municipal securities."

In Town of Coloma v. Eaves, supra, the court says:

"Where it may be gathered from the legislative enactment that the officers of the municipality were invested with the power to decide whether the condition precedent has been complied with, their recital that it has been complied with, made in the bonds issued by them, and held in the hands of a bona fide holder, is conclusive of the fact, and binding upon the municipality; for the recital is itself a decision of the fact by the appointed tribunal."

The court says in Commissioners v. January, supra:

"This act, like the act of 1868, authorized the commissioners to issue the bonds when the requirements of the law had been complied with. They were thus constituted a tribunal for the adjustment of all questions touching the subject. They were clothed with the power and charged with the duty to decide them. No appeal or review was provided for. Their issuing the bonds was the reflex and embodiment of their judgment that it was proper. It implies a prior determination to that effect."

The powers and duties of the board of directors of an irrigation district in California, touching the issuance of bonds, are set forth mainly in sections 15 and 16 of the act of March 7, 1887; and from the former section I quote, as directly pertinent here, the following:

"For the purpose of constructing," etc., "the board of directors of any such district must * * * estimate and determine the amount of money necessary to be raised. and shall immediately thereupon call a special election, at which shall be submitted * * * the question whether or not the bonds of said district shall be issued. * * * If a majority of the votes cast are 'Bonds—Yes,' the board of directors shall immediately cause bonds in said amount to be issued. Said bonds * * * shall be negotiable in form, signed by the president and secretary, and the seal of the board of directors shall be affixed thereto. * * * Said bonds shall express on their face that they were issued by authority of this act, stating its title and date of approval."

These provisions, and section 16, which relates to the sale of bonds, give to the board of directors full control over the issuance of bonds, and bring the case at bar fully within the rule above quoted from Bernards Tp. v. Morrison, where the court, after observing that legislative acts for the issuance of bonds rarely direct, in terms, the officers executing the bonds to pass upon preliminary conditions, comprehensively states the law thus: "It is enough that full control in the matter is given to the officers named." Furthermore, the power and duty of the board of directors of an irrigation district to ascertain and determine the facts authorizing the issuance of its bonds are nec-

essarily implied in the clause, "Said bonds shall express on their face that they were issued by authority of this act." Surely, the legislature did not intend that the board of directors should make a false recital, or certify to matters without inquiry as to their verity. The clause in question manifestly enjoins, if not in terms, by unavoidable inference, upon the board of directors to ascertain and determine that all preliminary conditions for issuance of bonds have been fulfilled, before they make the prescribed recital to that effect.

On this branch of the case my conclusion is that the recitals of the bonds, together with the allegation (which, for the purpose of the present hearing, must be accepted as true) that defendants are innocent purchasers, estop the district from asserting that no estimate or determination of the amount of money necessary to be raised by issuing bonds was made or had by said district, and also from asserting that the bonds were disposed of in manner or for considerations other than those prescribed by the statute.

2. The other plea of the defendants, which sets up certain proceedings and judgment of confirmation had in the superior court of San Diego county, does not go to the whole bill, but only to that part which alleges "that no estimate or determination was ever made or had by said pretended district before issuing bonds." Without undertaking now to define fully the scope of the proceedings and judgment of confirmation thus pleaded, it is sufficient to say that one of the matters potentially, if not actually, in issue in said proceeding was the fact that the estimate required by law of the amount of money necessary to be raised by the issuing of bonds was duly made, and that I still hold the views expressed by me in Miller v. Irrigation Dist. (C. C.) 85 Fed. 693, to the effect that a special proceeding by the directors of an irrigation district, brought under the act supplemental to the Wright act (St. Cal. 1889, p. 212), providing for special proceedings in the superior court for the confirmation of the organization of the district, and issue and sale of its bonds, is valid and binding as to all questions involved in such proceeding. After careful examination of the opinion last cited, I am unable to discern any inconsistency in its rulings, and now reaffirm them. Those relating to the organization of the district were substantially as follows: First, that, said district being a de facto corporation, its organization could not be collaterally attacked by an individual; second, that, if the first ruling was erroneous (that is to say, if an individual could attack the existence of a de facto corporation), still in the present case the decree of confirmation was conclusive against such attack; third, that, if the first and second rulings were erroneous (that is to say, if the existence of a de facto corporation was open to attack by an individual, and a decree confirming the organization of an irrigation district did not preclude such an attack), still the present suit, so far as it attacked the organization of the district, was barred by section 3 of the act of March 7, 1887, as amended by the act of March 20, 1891. It is true that in the third ruling concession of error in the first for the purposes of the third was not made in terms, but an ellipsis of that sort, the omitted words being obvious and readily supplied, is not uncommon, but of general use in judicial opinions, where the disposi-

tions of the matters at issue are rested upon two or more independent grounds, and untenableness of a prior ground is conceded for the purposes of subsequent grounds.

3. It has been held (and I am not advised of any decision to the contrary) that:

"A corporation de facto may legally do and perform every act and thing which the same entity could do and perform were it a de jure corporation. As to all the world, except the paramount authority under which it acts and from which it receives its charter, it occupies the same position as though in all respects valid; and even as against the state, except in direct proceedings to arrest its usurpation of power, it is submitted, its acts are to be treated as efficacious." People v. La Rue, 67 Cal. 526, 84 Pac. 84.

To the same effect, see 8 Am. & Eng. Enc. Law (2d Ed.) 748; Salt Co. v. Heidenheimer, 80 Tex. 34, 5 S. W. 1038; and Perun v. Cleveland, 43 Ohio St. 481, 3 N. E. 357.

From the doctrine thus announced it follows, in my opinion, that the judgment set up in the supplemental bill, declaring void the proceedings for the organization of the Perris irrigation district, does not impair the validity of, nor afford any ground for equitable relief against, obligations incurred prior to said judgment. Shapleigh v. City of San Angelo, 167 U. S. 646, 17 Sup. Ct. 957, 42 L. Ed. 310; Ashley v. Board, 8 C. C. A. 455, 60 Fed. 55; Havemeyer v. Iowa Co., 3 Wall. 294, 18 L. Ed. 38; 1 Dill. Mun. Corp. § 170. The pleas to the amended bill, and demurrer to the supplemental bill, will be allowed.